## NASSER *v.* KALUSH.

1. AUTOMOBILES—GUEST PASSENGERS—WILFUL AND WANTON MIS-
   CONDUCT—GROSS NEGLIGENCE—EVIDENCE—SLEEP.

   In guest passenger's action for injuries sustained when car left
   road after driver fell asleep after 2 a.m., evidence showing
   driver had worked 18 hours on Saturday and 14 hours on
   Sunday previous to accident, that he and another man had
   invited plaintiff and another girl to go for a ride, that the
   driver drank a bottle of beer at 10 p.m. and another before
   leaving amusement place about 2 a.m., that he had slept in
   the back seat while car was driven first 20 miles on return
   trip and had then taken wheel at other man's request, that
   driver did not remember feeling sleepy while driving re-
   maining 13 miles covered before the accident, *held,* insuffi-
   cient to prove by a preponderance of the evidence that the
   driver had overtaxed himself or that the drinking of the
   beer had any effect upon his condition so as to permit a
   finding by court sitting without a jury that driver was guilty
   of gross negligence or wilful and wanton misconduct (1 Comp.
   Laws 1929, § 4648).

2. SAME—SLEEP—GROSS NEGLIGENCE—WILFUL AND WANTON MIS-
   CONDUCT.

   The driver of an automobile, overcome by sleep, is not guilty
   of gross negligence or wilful and wanton misconduct unless
   he continues to drive in reckless disregard of premonitory
   symptoms.

Appeal from Ingham; Hayden (Charles H.), J.
Submitted April 17, 1941. (Docket No. 70, Calendar
No. 41,564.) Decided June 2, 1941.

Case by Mary Nasser against Lewis Kalush and
Samuel Kalush for injuries received in an automo-
bile accident. Judgment for plaintiff. Defendants
appeal. Reversed.

*Hubbard & McCullough,* for plaintiff.

*Sessions & Warner,* for defendants.

BOYLES, J.  Plaintiff was a guest passenger in an automobile owned by defendant Samuel Kalush and driven by defendant Lewis Kalush, his son, with the owner's consent.  This case arises out of an accident caused by the driver falling asleep, was tried by the court without a jury, and resulted in judgment for plaintiff.  On appeal, the defendants raise two questions: (1) Whether there was sufficient evidence of gross negligence or wilful and wanton misconduct to permit a recovery; and (2) whether plaintiff and defendants were engaged in a joint enterprise.  The facts are as follows:

In the evening of July 18, 1939, the defendant Lewis Kalush and his friend, Joseph J. Ferris, residents of Lansing, invited plaintiff and another girl to go for a ride.  After they started it was decided to go to Crystal lake, about 20 miles west of Ithaca, to a dance.  Lewis Kalush drove the car beyond the city limits north of Lansing and from that point Ferris drove to Crystal lake.  There they found the dance closed and amused themselves playing pool and duck pins until about 2 o'clock when they left to return to Lansing.  On the entire trip defendant Lewis Kalush drank two bottles of beer, one at St. Johns about 10 o'clock and one at Crystal lake before leaving.  Ferris drove the car from Crystal lake to Ithaca, about 20 miles, during all of which time Kalush slept in the rear seat of the car.  At Ithaca, Ferris stopped, said he was sleepy, and asked Kalush to drive.  Kalush testified:

"*Q.* Did he inquire as to whether you were sleepy?
"*A.* Yes, he asked me and I said I was O.K."

Kalush, after driving about 13 miles, fell asleep, went off the highway and the accident occurred.

Kalush, called for cross-examination by the plaintiff, testified:

"*Q.* Did you have any premonition prior to falling off to sleep that you were sleepy?

"*A.* I don't quite understand what you mean by that question.

"*Q.* Did you have any feeling that you were sleepy prior to your actually falling to sleep from the time you took the wheel of the car until the accident happened or until you went to sleep? Did you have any feeling you were going to sleep?

"*A.* That I was aware of going to sleep?

"*Q.* Yes, if you were aware of a sleepy feeling, dozing off and catching yourself?

"*A.* And still persisted to drive?

"*Q.* Yes.

"*A.* No, I didn't. I did not know I was driving and doing it under a condition that I shouldn't have been."

He further testified that he had been working late for two nights previous to the accident—18 hours on Saturday and 14 on Sunday, and had had about 8 hours' sleep—that he was accustomed to working late and not having much sleep. As to his condition at the time of the accident, he further testified:

"*Q.* At any time prior to your falling asleep from the time you took the wheel, did you have any feeling of being physically tired?

"*A.* I don't remember, I didn't give that much thought then. You don't think about those things. When I took the wheel I knew I was all right because I agreed to it and said I felt all right.

"*Q.* Would you say you don't know or can't remember now, what would your answer be?

"*A.* Well, there wasn't anything that happened that startled me to show that I wasn't in condition to drive. I drove until the accident, that is all I remember.

"*Q.* You were in this run-down condition from lack of sleep were you not?

"*A.* I wouldn't say run-down condition. I probably wasn't up to normal.

"*Q.* But you say you can't remember whether you were physically tired?

"*A.* Any person would be physically tired at 2 o'clock in the morning.

"*Q.* But I mean more than usual.

"*A.* I don't remember."

In a letter admitted in evidence, written by Kalush to Ferris some months after the accident, Kalush stated:

"I must have been physically tired. I didn't realize this until after I started driving. I had driven all night many times and never had an accident."

Kalush was a senior student at a university in Omaha, Nebraska, over 700 miles from Lansing, and testified he had driven this distance many times in one continuous trip, about 18 hours, driving all night; that on those occasions he never got sleepy but once and on that occasion he pulled off the road and slept—that on that occasion he felt a premonition of sleep as if he needed rest. He testified that he did not remember feeling sleepy while driving before the accident in question occurred and had no reason to stop.

"*Q.* At the time you got behind the wheel of this car and you were driving, did you have any feeling in your mind at all, you were unable and physically unfit to drive that car?

"*A.*  No, because I said I wasn't and when I say something I say what I mean.  * * *

"*Q.*  In addition to the sleep that you had had, you took a nap this particular night before you took the wheel too, didn't you?

"*A.*  I suppose I slept from Crystal lake to Ithaca.

"*Q.*  He wakened you at Ithaca?

"*A.*  Yes.

"*Q.*  Would you say he asked you to drive the car?

"*A.*  Yes.

"*Q.*  Did he ask you if you were sleepy?

"*A.*  Yes.

"*Q.*  And what did you tell him?

"*A.*  I said no.

"*Q.*  Did you feel you were able to drive it properly?

"*A.*  Yes.

"*Q.*  Had you felt you were not able to drive it, what would you have done?

"*A.*  Told him so.

"*Q.*  Would you have driven it had you felt you were unable to drive it?

"*A.*  I wouldn't have driven it if I was sleepy then, no.

"*Q.*  Then came a time when you suddenly fell off to sleep and you hit the tree?

"*A.*  Yes.  * * *

"*Q.*  Did you have any feeling you were in a run-down condition and sleepy at the time you were driving the car?

"*A.*  No."

He further testified that he slept all the way from Crystal lake to Ithaca:

"*Q.*  Did that sleep you had from Crystal lake to Ithaca rest you?

"*A.*  It must have rested me some, that is what sleep does.

"*Q.* Did it rest you so you felt you were able to drive safely?

"*A.* As I said before, I answered I was in condition to drive so I must have been. I never lie about driving."

Kalush admitted that he drank two bottles of beer during the evening, one at St. Johns early in the evening, and another at Crystal lake. As to its effect, he testified:

"*Q.* Did the beer affect you in any way?

"*A.* Not at all. I had them so far apart. I had one at 10 o'clock, that had no ill effect at all."

The only other witnesses sworn were Joseph J. Ferris and the plaintiff. Their testimony does not contradict that given by Kalush. Under the undisputed testimony, plaintiff has not proven by a preponderance of the evidence that defendant Lewis Kalush was guilty of gross negligence or wilful and wanton misconduct. Kalush had no premonitory symptoms or warning of sleepiness. Plaintiff has not established by a preponderance of the evidence that Kalush had overtaxed himself or that the drinking of the beer had any effect upon his condition. No circumstances were shown which would cause a reasonably prudent person to anticipate falling asleep and, therefore, proceeding to drive in defiance of the results. We have held that the driver of an automobile, overcome by sleep, is not guilty of gross negligence or wilful and wanton misconduct unless he continues to drive in reckless disregard of premonitory symptoms. *Wismer* v. *Marx*, 289 Mich. 38 (7 N. C. C. A. [N. S.] 624); *Perkins* v. *Roberts*, 272 Mich. 545; *Boos* v. *Sauer*, 266 Mich. 230.

"Judging from the driver's expressed state of mind relative to his ability to continue to drive and

plaintiff's acquiescence therein it cannot be found that his further driving constituted a conscious and reckless disregard of consequences to plaintiff. The case stands apart from instances where danger was recognized by a guest, called to the attention of the driver, protest made, request for discontinuance or right to leave the vehicle refused, and the anticipated result by reason of the continued recklessness of the driver has been realized, and a wilful and wanton disregard of consequences can be found." *Wismer* v. *Marx, supra.*

Under the decisions of this court, defendants were not guilty of gross negligence or wilful and wanton misconduct. This being decisive of the case, it is unnecessary to discuss the question of joint enterprise.

Reversed without a. new trial, with costs to defendants.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., did not sit.