214 So.2d 301

Gerald D. LANKFORD

v.

Lawrence W. MONG, as Administrator.

.7 Div. 707.

Supreme Court of Alabama.

Sept. 12, 1968.

and intended to punish negligent, wanton or intentional acts causing the death of a person. Gulf, Mobile & O. R. Co. v. Williams, 251 Ala. 516, 38 So.2d 334.

The case went to the jury on a single count which charged wantonness and on the defendant's plea of the general issue in short by consent.

There was jury verdict in favor of the plaintiff in the amount of $10,000. Judgment was rendered and entered in accordance with the jury verdict.

After his motion for a new trial was overruled, the defendant appealed to this court.

The appellant, the defendant below, argues in brief that the trial court erred to a reversal in two respects: in denying the affirmative charges requested by appellant in various forms and in overruling those grounds of appellant's motion for new trial which took the point that the verdict was contrary to and not sustained by the preponderance of the evidence.

Rives, Peterson, Pettus & Conway, Birmingham, for appellant.

Carl H. Merrill, Heflin, and Walter J. Merrill, Anniston, for appellee.

LAWSON, Justice.

This is a suit by Lawrence W. Mong, as administrator of the estate of his deceased son, against Gerald D. Lankford to recover damages for the death of his son, who died as a result of injuries received while riding as a guest passenger in an automobile being driven by the defendant and which struck a concrete bridge abutment in Cleburne County a short distance west of Heflin.

The suit was filed under the authority of the wrongful death statute (§ 123, Title 7, Code 1940) which is designed

The rule in this state is that in civil cases a question must go to the jury if the evidence or the reasonable inferences arising therefrom furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the complaint. South Highlands Infirmary v. Camp, 279 Ala. 1, 180 So.2d 904, 14 A.L.R.3d 1245; Boggs v. Turner, 277 Ala. 157, 168 So.2d 1; Southern Apartments, Inc., v. Emmett, 269 Ala. 584, 114 So.2d 453; Alabama Great Southern R. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190.

And we have said that when the affirmative charge is refused and the party who requested it appeals, we review the tendencies of the evidence most favorably to the opposite party regardless of any view we may have as to the weight of the evidence; and we must allow such reason-

able inferences as the jury was free to draw, not inferences which we may think the more probable. South Highlands Infirmary v. Camp, supra; W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375; Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292, 169 So.2d 314; Duke v. Gaines, 224 Ala. 519, 140 So. 600; Chesser v. Williams, 268 Ala. 57, 104 So.2d 918.

■ Wantonness is the conscious doing of some act or omission of some duty under knowledge of the existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. Duke v. Gaines, supra; First Nat. Bank of Dothan v. Sanders, 227 Ala. 313, 149 So. 848; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; W. S. Fowler Rental Equipment Co. v. Skipper, supra; Smith v. Roland, 243 Ala. 400, 10 So.2d 367. But knowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact or actual knowledge is a legitimate inference. Lewis v. Zell, 279 Ala. 33, 181 So.2d 101; Griffin Lumber Co. v. Harper, supra; Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77.

Plaintiff below based his right to recover on the claim that the accident which resulted in the death of his intestate was caused by the fact that the defendant went to sleep while driving; that he had been without sleep for a considerable length of time and had experienced symptoms of the approach of sleep.

In Whiddon v. Malone, 220 Ala. 220, 223, 124 So. 516, 518, we said:

"Without extended discussion, we hold that going to sleep at the wheel while operating a car is evidence of negligence. The dangers of running a car while asleep are so obvious as to need no comment. It is the duty of the driver to keep awake or cease to drive. A failure so to do is prima facie evidence of negligence. The burden passes to the defendant to show some unusual cause of his falling asleep which reasonable diligence could not foresee nor forestall."

Malone, a passenger in an automobile being driven by Whiddon, recovered a judgment. The complaint charged negligence, not wantonness, because the accident there involved occurred prior to the effective date of our so-called guest statute, § 95, Title 36, Code 1940, which provides:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

Since the accident here involved occurred after the effective date of the provisions now codified as § 95, Title 36, supra, plaintiff in his complaint charged the defendant with wantonness. Hence plaintiff does not rely upon our holding in Whiddon v. Malone, supra.

So, by this appeal we are asked, for the first time in this state, to articulate the elements making up wanton misconduct in a situation where the driver goes to sleep at the wheel and as a result thereof a guest passenger is killed or injured.

This situation has been considered by other courts. In 28 A.L.R.2d at page 72 the annotator states the rule thusly:

"A driver of an automobile is not guilty of wanton or wilful misconduct in

falling asleep while driving unless it appears that he continued to drive in reckless disregard of premonitory symptoms. Generally speaking, if it appears that the driver of an automobile has been without sleep for a considerable period of time and has experienced symptoms of the approach of sleep, the fact that he continues to drive under such circumstances has been held to manifest a wilful and wanton disregard for the safety of others within the meaning of the applicable guest statute. * * *"

From a reading of the cases on the subject there appears to be divergent views as to what constitutes "premonitory symptoms."

In this case the evidence shows without dispute that the appellant, the defendant below, was an entertainer, who lived in Anniston, Alabama, at the time of the accident. He left Anniston at about 2:00 p.m., Central Standard Time, on Monday afternoon, January 27, 1964, enroute to Atlanta to seek employment. He arrived in Atlanta at about 6:00 p.m., Eastern Standard Time, and shortly after his arrival in Atlanta he secured a job as a piano player and singer. He worked until approximately 12:30 a.m. on the morning of January 28, 1964, although he had a two-hour "break in between." He was also engaged as an entertainer for Tuesday night, January 28, 1964, and worked from 9:00 p.m., Eastern Standard Time, on that night until approximately 12:30 a.m. on Wednesday morning, January 29, 1964. Within a few minutes thereafter he left Atlanta for his home in Anniston. At Austelle, Georgia, he picked up the plaintiff's intestate, a young student who was "hitchhiking" rides to Louisiana State University from Washington, D.C. After he picked up young Mong they talked for about twenty-five minutes and then Mong went to sleep and there was no more conversation between the two. As the defendant drove through Heflin he was aware of the speed limit signs and complied with them, including one just outside of Heflin. He was driving his car in the right lane

"as far to the right" as he could without running off the road. He did not recall "ever seeing the bridge abutment" before he "struck it."

The foregoing is a summary of the material parts of the testimony of appellant, the defendant below, which is not in conflict with the testimony of the witnesses called by the plaintiff below.

The appellant, the defendant below, was seriously injured in the accident and was taken to a hospital in Heflin, where he remained approximately two weeks, and was then removed to a hospital in Atlanta. When he got to the hospital in Heflin "they put something" in his arm but he did not know what it was.

Three witnesses called by the plaintiff below testified as to statements made by the defendant below at the hospital in Heflin.

Their testimony was as hereafter summarized. The conversation with defendant was within one hour after the accident and was with the permission of hospital personnel, who did not advise them that defendant was under sedation. Defendant talked coherently. He told them that he didn't know what happened; that he did not know whether he fell asleep but that he could have; that he had little sleep on the night of January 27, 1964; that he had gotten up early on the morning of January 28 and had had no sleep since he got up prior to the accident; that he was tired, "had been losing a lot of sleep," but was trying to get to Anniston, his home; that the last thing he remembered seeing was a speed limit sign, which was approximately two-tenths of a mile east of the bridge abutment; that he did not remember meeting any vehicles after he passed the speed limit sign.

■ The conclusion seems inescapable that under our scintilla rule the case was one for the jury to evaluate. There is present here not only a consciousness or awareness of sleepiness, tiredness and fatigue, but

in addition evidence of no sleep since early on the morning of January 28, several hours of work as an entertainer, and a drive of approximately eighty miles which began shortly after that work was completed, all of which adds to the awareness of the hazard of harm. Thus, when the defendant became aware of his sleepiness, tiredness and fatigue, he had to realize that the risk of his going to sleep was a real one. When he thereafter elected to drive his car at an accelerated speed after leaving Heflin, it was a question for the jury as to whether he had knowledge of facts which would disclose the danger of going to sleep to any reasonable man. Or stated differently, the evidence was sufficient to warrant submission to the jury of the question as to whether the defendant with reckless indifference to the consequences consciously and intentionally did a wrongful act which cause the death of plaintiff's intestate.

We have read the cases cited in the briefs filed on behalf of both parties to this cause and others, and although we realize that there are factual distinctions in the cases hereinafter cited, we believe that they support our holding. Hodges v. Ladd, 143 Colo. 143, 352 P.2d 660; Parker v. Foxworthy, 154 Colo. 455, 391 P.2d 358; Smith v. Williams, 180 Or. 626, 178 P.2d 710, 173 A.L.R. 1220; Barmann v. McConachie, 289 Ill.App. 196, 6 N.E.2d 918; Marks v. Marks, 308 Ill.App. 276, 31 N.E.2d 399; Turner v. Schaefer, 30 Ill.App.2d 376, 174 N.E.2d 690; Potz v. Williams, 113 Conn. 278, 155 A. 211; Halstead v. Paul, 129 Cal.App.2d 339, 277 P.2d 43; Baker v. Williams, 144 Colo. 470, 357 P.2d 61; Maxwell v. Amaral, 79 Nev. 323, 383 P.2d 365 (gross negligence); Secrist v. Raffleson, 326 Ill.App. 489, 62 N.E.2d 36.

One of the cases relied upon by appellant for reversal of the judgment here under review is Covington v. Carley, 197 Miss. 535, 19 So.2d 817, where the accident occurred in Alabama but the suit was filed in Mississippi. The Mississippi court was called upon in that case to consider our guest statute in relation to facts showing that the defendant went to sleep and ran off the road, causing injury to her passenger. The Mississippi court held that the evidence in that case was not sufficient to show wanton misconduct on the part of the defendant and consequently reversed on the ground that the trial court erred in refusing the defendant's request for a peremptory instruction. We agree with the holding of the Mississippi court, but think it clearly distinguishable from the case at bar. In the Mississippi case there was an absence of evidence tending to show premonitory symptoms except as to the testimony of defendant's mother to the effect that the defendant told her after the accident, "If I had only pulled out to the side of the road it wouldn't have happened—pulled out and slept a little, it wouldn't have happened." The defendant denied making that statement.

Appellant also cites cases from Michigan and South Dakota which appear to support appellant's contention. Those cases seem to require more than drowsiness or sleepiness as a premonitory symptom. For instance, where a driver, when he first became conscious of drowsiness, heeded the warning, refreshed himself and then resumed driving, it was held, in effect, in Perkins v. Roberts, 272 Mich. 545, 262 N.W. 305, that a jury question was not presented as to whether he was guilty of wantonness if, after resumption of driving, he was suddenly and without warning overcome by sleep. South Dakota's guest statute was adopted from Michigan (Melby v. Anderson, 64 S.D. 249, 266 N.W. 135), so the South Dakota court seems to rely upon and follow the Michigan cases.

We think it can be said of the courts of Michigan and South Dakota that they require more proof to show premonitory symptoms than do the courts of the states which we have followed. The South Dakota and Michigan cases cited by appellant are Antonen v. Swanson, 74 S.D. 1, 48 N.W.2d 161, 28 A.L.R.2d 1; Melby v. Anderson, 64 S.D. 249, 266 N.W. 135 (not a sleeping case); Boos v. Sauer, 266 Mich. 230, 253 N.W. 278; Perkins v. Roberts,

272 Mich. 545, 262 N.W. 305; Nasser v. Kalush, 298 Mich. 133, 298 N.W. 480; Butine v. Stevens, 319 Mich. 176, 29 N.W.2d 325. Another Michigan case to like result is Wismer v. Marx, 289 Mich. 38, 286 N.W. 149.

In Notare v. Notare, 64 N.J.Super. 589, 166 A.2d 816, recovery was denied, but the evidence relied on to show premonitory symptoms was not as strong as in the case at bar. The New Jersey court accurately stated: "Each case must depend on its own facts."

In De Shetler v. Kordt, 43 Ohio App. 236, 183 N.E. 85, the accident occurred in Michigan and in denying liability, the Ohio court followed the Michigan decisions.

Under varying factual situations, recovery was denied in the following California cases where the plaintiff contended the cause of the accident was the fact that the driver went to sleep or was drowsy while driving. Forsman v. Colton, 136 Cal. App. 97, 28 P.2d 429; Rode v. Roberts, 11 Cal.App.2d 638, 54 P.2d 498; Phillips v. Harper, 60 Cal.App.2d 298, 140 P.2d 686. In our opinion, those cases are clearly distinguishable from the case at bar on the facts.

In Brown v. Frandsen, 19 Utah 2d 116, 426 P.2d 1021, the Utah court denied liability on a finding that the driver of the car did not have "any premonitory warning that he was about to fall asleep unless we conclude that sleep does not occur without the consciousness that it is imminent."

This case, which is of first impression in this state, has presented a difficult question for decision. We have given it much study and consideration and believe that the conclusion which we have reached is correct under the facts here presented. But we say, as the New Jersey court said in effect in Notare v. Notare, supra, that each case of this kind must be decided on its own facts.

We hold that the trial court did not err in refusing the affirmative instructions requested by appellant, the defendant below, or in overruling the grounds of his motion for new trial which took the point that the verdict was contrary to and not sustained by the evidence.

Affirmed.

LIVINGSTON, C. J., and HARWOOD and KOHN, JJ., concur.