417 So.2d 146 (1982)
Floyd TEW and Perla T. Tew
v.
Tommie Lewis JONES and Winn-Dixie Stores, Inc.
81-8.
Supreme Court of Alabama.
June 4, 1982.
Rehearing Denied July 23, 1982.
George E. Trawick, Ariton, for appellants.
William L. Lee, III and William C. Carn, III, of Lee & McInish, Dothan, for appellees.
PER CURIAM.
This is a suit by Plaintiffs Floyd and Perla Tew to recover damages for injuries to Mr. Tew resulting from a collision between Defendant Winn-Dixie's truck, driven by Defendant Jones, with Tew's vehicle. Plaintiffs' complaint alleged both negligence and wantonness on the part of Defendants. Defendants denied all claims and further alleged contributory negligence as an affirmative defense. Judgment was entered on a directed verdict for Defendants on the count of wantonness and on a jury verdict for Defendants on the count of negligence and on Mrs. Tew's derivative claim for loss of consortium.
This appeal claims error in the trial court's rulings that there was not a scintilla of evidence in support of Plaintiffs' wantonness count, granting Defendants' motion for a directed verdict on that count, and denying Plaintiff's motion for new trial.
Plaintiffs, citing the cases of Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968), and Gunnells v. Dethrage, 366 So.2d 1104 (Ala. 1979), maintain that "[i]t was error to exclude the wanton count from jury consideration when there was at least a scintilla that defendant driver had a consciousness or awareness of sleepiness, tiredness, and fatigue but continued to drive with reckless indifference to the consequences."
The evidence is uncontradicted as to the workday of Defendant Jones prior to the accident. Jones arose at 1:30 A.M. on December 15, 1977, after five-and-one-half hours of sleep. He arrived at the Winn-Dixie warehouse in Montgomery at 1:45 A.M., "punched in" at 2:00 A.M., and left for Florida at 3:00 A.M. From that time until the time of the accident at 5:30 that afternoon, Defendant Jones continued to *147 drive and make deliveries. His testimony indicated "breaks" for breakfast and for a soft drink at 2 P.M.
Plaintiffs contend that the evidence of the length of Defendant Jones's workday indicated at least a scintilla of proof of Jones's consciousness of sleepiness, tiredness, and fatigue and, therefore, the trial court erred in taking the issue of wantonness from the jury.
We do not agree and we affirm the judgment of the trial court.
In Lankford v. Mong, supra, this Court reiterated the standard for determining the issue of alleged wantonness:
"Wantonness is the conscious doing of some act or omission of some duty under knowledge of the existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury." Lankford, at 283 Ala. 26, 214 So.2d 301.
Further, as Plaintiffs carefully point out, the requisite knowledge for the imposition of liability for wantonness in the instant case was a realization of the "premonitory symptoms" of sleep, and such a symptom "need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact or actual knowledge is a legitimate inference." Lankford, at 283 Ala. 26, 214 So.2d 301.
Factually, however, both Lankford and Gunnells are clearly distinguishable from the instant case. In Lankford, the defendant driver admitted that he could have fallen asleep, that he had been "losing sleep lately," and that the last thing he remembered seeing was a speed limit sign two tenths of a mile away from the bridge abutment which his car struck. In the later case of Gunnells, the evidence showed that the driver testified that he may have been drowsy and that his car had drifted across the center of the road just before the accident; that the driver told an ambulance attendant that he had dozed off two or three times prior to the accident; and that the passenger in the defendant's car testified that the car had run off the road two times before the accident occurred.
The case now before us is devoid of "circumstances from which the fact or actual knowledge [of Jones's sleepiness] is a legitimate inference." The schedule of Jones's workday, the amount of sleep he had had the night before, and the number of "breaks" he had had during the day in no way tends to show that Jones was sleepy or that he was, at the time of the accident, exhibiting premonitory symptoms of sleep. But, more than this, there is no evidence, direct or circumstantial, that furnishes any reasonable inference that Jones "consciously and intentionally did some wrongful act or omitted some known duty which produced the injury." Indeed, for the trial court to have denied the motion for directed verdict would have been to permit the jury to engage in pure speculation and equate a long workday with the requisites for wanton conduct resulting in the injury complained of.
We hold that the trial court did not err in granting a directed verdict as to the wanton count nor in denying a new trial.
AFFIRMED.
TORBERT, C. J., and MADDOX, SHORES and BEATTY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I concur completely with the Court's holding that the evidence was insufficient to withstand a directed verdict motion on the wanton count. I concur specially in order to clarify what I perceive as a common misunderstanding of the scintilla rule and its application.[1] Without attempting a *148 detailed review of the case law development of the rule, and at the risk of oversimplification, I would observe, initially, that the term "scintilla" was originally used in the context of extolling the sanctity of the right of trial by jury.[2] Generally speaking, the earliest references to the scintilla rule were in the nature of admonitions to the trial bench not to substitute its judgment for that of the jury as the factfinder.
From this innocent and noble beginning, it has evolved into a state of confusion. This confusion is perhaps best dramatized by the somewhat common belief that the scintilla rule, in a given case, may mandate the submission of a case to the jury, on the one hand, while a verdict based on a mere scintilla of evidence, on the other hand, will not withstand a post-judgment motion for J.N.O.V.
I believe this misconception is rooted in the failure of the cases to adequately articulate a definitive test which can be readily applied. Indeed, the cases are replete with the "definition" of scintilla (gleam, glimmer, spark, etc.), but devoid of any expression of a yardstick by which the trial judge can measure the sufficiency of the evidence as a requisite for its submission to the jury. In other words, the mere definition of "scintilla" falls short of the requisite test for submission of the case to the jury.
I would state the test as follows: Whether the party having the burden of proof has adduced any evidence of probative value from which reasonable persons may fairly and reasonably infer the material fact sought to be proved. If so, whether such evidence, or a reasonable inference therefrom, if believed, when taken together with all the other evidence bearing on the essential elements of the case (or the defense), if believed, is legally sufficient to support the plaintiff's theory of the case or the defendant's affirmative defense.
The application of this testany evidence which, if believed, would allow reasonable persons to infer a material factcompels the submission of a case to the jury. Otherwise, the facts sought to be proved necessarily rest on speculation, mere guess, or conjecture.
If the trial judge concludes that this two-pronged test has been met, he then properly denies a motion for a directed verdict, as well as a post-judgment motion for J.N. O.V., the test for each challenge being the same. A motion for a new trial on the ground that the verdict is against the great weight and preponderance of the evidence, of course, addresses itself to the sound discretion of the trial judge and invokes an entirely different test. In this context, then, a motion for a new trial assumes (although it may be stated in the alternative) that the sufficiency of the evidence test has been met, but asks the court for relief by way of a new trial because the verdict is so against the great weight and preponderance of the evidence as to be palpably wrong and manifestly unjust.
Just as the scintilla of evidence concept serves to admonish the trial judge not to withdraw a material factual issue from the jury's consideration and determination pursuant to the "any evidence of probative value" test set out above, the trial judge should exercise his discretion to grant a new trial on the "great weight and preponderance of the evidence" ground only in the most extreme cases. The armor that undergirds both principles, of course, is the sanctity of the jury verdict.
NOTES
[1] For two articles that furnish excellent insight into this problem, see J. Hoffman, "The Scintilla Rule and Other Topics," 43 Ala.Law. 259 (1982); J. Hoffman, "Alabama's Scintilla Rule," 28 Ala.L.Rev. 592 (1977).
[2] Penticost v. Massey, 202 Ala. 681, 81 So. 637 (1919).