ON APPLICATION FOR REHEARING
This court's original opinion dated June 7, 1991, is withdrawn, and the following is substituted therefor:
Joyce Gresham (now Roszell) filed a complaint against the U-Haul Company of Alabama (U-Haul) and Troy Wade Martin, alleging the negligent and wanton operation of a vehicle and seeking damages for personal injuries. Roszell's amended complaint further alleged that Shawn Hurston had negligently entrusted the vehicle to Martin. U-Haul was released from this action by a summary judgment entered on January 12, 1990, and is not a party to this appeal.
Following presentation of Roszell's case-in-chief, the trial court granted the defendants' motion for directed verdict on Roszell's claim of wantonness. Roszell's claim of negligence was tried before a jury, which returned a verdict against Martin and Hurston and in favor of Roszell and assessed damages in the amount of $900. Roszell then filed a motion for a new trial on the grounds that the jury verdict was inadequate. This motion was overruled by the trial court.
Although the only issue raised by Roszell in her motion for new trial concerned the adequacy of the jury verdict, she raises several issues on appeal. First, Roszell contends that the trial court erred in granting a directed verdict on her claim of wantonness. She next contends that the jury's award of damages of $900 was inconsistent with the damages proved and that the trial court erred in overruling her motion for a new trial. Roszell also contends that the trial court erred to reversal in charging the jury as to the defendants' defense of contributory negligence and in refusing to give the jury the affirmative charge she requested as to this defense. She further *Page 513 
contends that the trial court erred in denying her the right to introduce into evidence the cost of the medical insurance that paid part of her medical bills. Finally, Roszell contends that § 12-21-45, Ala. Code 1975, is unconstitutional.
The record shows that on March 18, 1988, Hurston rented a 24-foot U-Haul truck in Birmingham, Alabama, for purposes of moving furniture from Savannah, Georgia, to Birmingham. On the evening of March 18, Hurston and Martin, who was sixteen years of age at the time, proceeded in the truck to Savannah. Martin assisted Hurston with the driving on the trip to and from Savannah. Sometime after sundown on March 19 in Oxford, Alabama, Martin was driving and attempted to pull the truck into traffic after a stop at a service station, when an automobile in which Roszell was a passenger collided with the driver's side of the truck. The driver of the car in which Roszell was a passenger was not injured. However, the collision threw Roszell forward, and her head struck the windshield in the vehicle she occupied.
Martin, who had had his driver's license for only about two months at the time of the accident, testified that he had gotten only about two hours of sleep in approximately the previous 36 hours prior to the accident.
Roszell specifically points to Martin's lack of sleep and maintains that the trial court erred in granting a directed verdict on the claim of wantonness and that the issue should have been presented to the jury. She asserts that the operation of a 24-foot truck by a driver who has not had the necessary sleep is conduct amounting to wantonness, or that a jury should at least be allowed to make that determination in this case. We disagree.
We note initially that in deciding whether there is sufficient evidence to submit an issue to a jury, proof by "substantial evidence" is now required in Alabama. See §12-21-12, Ala. Code 1975. "A scintilla of evidence is insufficient to permit submission of an issue of fact to the trier of facts." § 12-21-12(d).
In Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968), which dealt with a wrongful death action brought by the administrator of an automobile guest passenger's estate, our supreme court reiterated the standard for determining the issue of alleged wantonness:
 "Wantonness is the conscious doing of some act or omission of some duty under knowledge of the existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury."
Lankford, 283 Ala. at 26, 214 So.2d at 302. The court inLankford articulated for the first time in Alabama the elements of wanton misconduct in a situation where a driver is accused of falling asleep at the wheel, quoting with approval the following language from 28 A.L.R.2d:
 " 'A driver of an automobile is not guilty of wanton or wilful misconduct in falling asleep while driving unless it appears that he continued to drive in reckless disregard of premonitory symptoms.' "
Lankford, 283 Ala. at 26-27, 214 So.2d at 303 (quoting 28 A.L.R.2d 72).
This standard for wantonness has been held to apply also in cases of diminished alertness, where a driver is alleged to have had a "consciousness or awareness of sleepiness, tiredness, and fatigue but continued to drive with reckless indifference to the consequences." Tew v. Jones, 417 So.2d 146
(Ala. 1982). Thus, the requisite knowledge for the imposition of liability in such cases is "a realization of the 'premonitory symptoms' of sleep." Id. at 147.
Even under the old "scintilla rule," this jurisdiction has required that there be a legitimate inference of knowledge of premonitory symptoms before submitting the issue of wantonness to a jury. Importantly, in the cases where the issue has been submitted to the jury, actual testimony of *Page 514 
drowsiness or sleepiness has bolstered such an inference.See Gunnells v. Dethrage, 366 So.2d 1104 (Ala. 1979); Lankford,283 Ala. 24, 214 So.2d 301. See also Tew, 417 So.2d 146.
While a driver's realization of such premonitory symptoms need not be shown by direct proof and may be made to appear by showing circumstances from which the fact of actual knowledge is a legitimate inference, Lankford, 283 Ala. 24,214 So.2d 301, we find the record to be devoid of substantial evidence in support of such an inference.
Testimony indicated that during the course of the trip to and from Savannah, Martin shared driving duties with Hurston. Hurston testified that "[w]e'd swap up to keep from getting real tired or anything." He further testified that he had not observed Martin weaving or anything of that nature on the portions of the trip he drove. While Martin testified to limited sleep during this period, he also testified that he was frequently relieved from driving the truck. In fact, the record reveals that Martin had not been driving on the leg of the journey from Atlanta to Oxford just prior to the stop at the service station near where the accident occurred.
Other facts surrounding the accident are not supportive of an inference that the accident was the kind typically caused by falling asleep at the wheel. Martin and Hurston had just stopped for several minutes to fill the truck with gas, and each drank a soft drink before Martin took over the driving. Martin testified that once he was behind the wheel, he stopped the truck at the service station exit, looked for traffic, and then pulled the truck at a slow rate of speed into the road. There was also testimony that both Martin and Hurston looked for oncoming cars and that both were attentive to the task of crossing the road. When the accident occurred, Martin was not driving at a high rate of speed on an open road, where the likelihood of his "nodding off" is a more plausible inference. Moreover, no testimony was adduced tending to indicate the premonitory signs of sleep. Thus, there was no evidence, direct or circumstantial, furnishing a reasonable inference that Martin "consciously and intentionally did some wrongful act or omitted some known duty which produced the injury."Lankford, 283 Ala. at 26, 214 So.2d at 302.
For the trial court to deny the motion for directed verdict would be to permit the jury to engage in pure speculation and to equate Martin's limited sleep, based on nothing more, with the requisites for wanton conduct. Accordingly, we find that the trial court was not in error when it granted the defendants' motion for a directed verdict as to Roszell's wantonness claim.
As to Roszell's contention that the jury's award of damages of $900 was inconsistent with the damages proved, we disagree.
We note that jury verdicts carry a presumption of correctness in Alabama. This presumption is further strengthened where, as here, the trial court has denied a motion for a new trial.Ashbee v. Brock, 510 So.2d 214 (Ala. 1987). The appellate court must review the tendencies of the evidence most favorably to the prevailing party, indulging such inferences as the jury was free to draw. Therefore, a judgment based on a jury verdict will not be reversed unless it is plainly and palpably wrong.Brannon v. Webster, 562 So.2d 1337 (Ala.Civ.App. 1990). Moreover, a reviewing court will substitute its judgment for that of the jury on the question of damages only if the amount is so grossly inadequate as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury.Davis v. Copas, 455 So.2d 27 (Ala.Civ.App. 1984).
Our review of the record reveals the following pertinent facts: Roszell testified that immediately following the accident she began to suffer with a headache and neck pain and that this pain soon became excruciating. She testified that she also began to experience dizziness and nausea in the period after the accident. Roszell then sought treatment from Dr. Loretta Griffin, a chiropractor who had treated Roszell on numerous occasions prior to the accident. Griffin testified that Roszell had not complained *Page 515 
of dizziness or nausea during treatments before the accident and that the intensity of the pain she complained of after the accident was different from that which she had complained of before.
Through various physical manipulations and methods, Griffin treated Roszell for the pain she experienced after the accident; however, when Roszell's pain continued over a period of months, Griffin referred her to Dr. Thomas L. Wright, a neurologist. The cost to Roszell of post-accident treatment by Griffin was $4,789.50, of which $1,884.20 was not paid by her medical insurance. Roszell calculates her travel costs to and from treatment were about $240. She missed 26 1/2 days of work following the accident and calculates that she lost $1,475.52 in wages as a result. She further testified to ongoing pain.
Dr. Wright diagnosed Roszell's injury as a herniated disc in the C5 and C6 region of her neck. While he could not specifically state when the herniation occurred, he testified that it was consistent with the jamming of the head into an automobile windshield. Testimony adduced at trial indicated that surgery for a herniated disc would cost a minimum of $2,500 in doctors' bills and a minimum of $6,000 in hospital bills.
Roszell contends that her damages were proven and undisputed and that the jury therefore should have awarded her an amount exceeding $900.
It is well settled that a jury, having found the liability issue in favor of the plaintiff, is not free to assess damages in an amount less than those special damages, proven by way of medical expenses and loss of earnings, that proximatelyresulted from the culpable conduct of the defendant. Brannon,562 So.2d 1337. However, the jury is not bound to award medical expenses merely because they are incurred. It may question the reasonableness and necessity of expenses and determine whether the claimed expenses are proximately caused by the negligence of the defendant. Orr v. Hammond, 460 So.2d 1322
(Ala.Civ.App. 1984). When the extent of the injury is uncertain, the jury has discretion to determine the amount of damages.Lartigue v. Fleming, 489 So.2d 583 (Ala.Civ.App. 1986).
Upon examination of the record, we find that the extent of Roszell's injuries that can be attributed to the car accident is not uncontroverted and that there is no dispositive evidence that the expenses she incurred after the accident were necessarily and directly related to the accident. The evidence shows that for a 2-year period prior to the accident, Roszell had been treated by Griffin, approximately 50 times, for symptoms similar to those she complained of after the accident. Testimony further showed that Griffin, through various physical manipulations and methods, treated Roszell for pain in the C5 and C6 region of her neck, both before and after the accident, and that Roszell was also being treated for headaches prior to the accident. Roszell received substantially the same treatment from Griffin throughout a 3-year period before consulting Dr. Wright, a neurologist, and Dr. Bluitt L. Landers, a neurological surgeon, approximately one year after the accident. The testimony revealed uncertainty on the part of these medical experts as to the nature of Roszell's problems and as to the origin of the symptoms for which she received treatment. Dr. Wright's testimony was inconclusive as to the origin of the herniated disc he diagnosed, while Dr. Landers testified that in his examination of Roszell she had not shown symptoms typical of a herniated disc. The uncertainties raised by the evidence presented a factual question for the jury of the degree of the injury and the treatment necessary.Brannon, 562 So.2d 1337. It is clear that the jury did not believe Roszell proved her claim of damages. In view of the above, we cannot say that the jury award was inconsistent with the evidence.
Roszell next contends that the trial court erred to reversal in charging the jury as to the defendants' defense of contributory negligence and in refusing to give the jury an affirmative charge as to this defense. We disagree. *Page 516 
Without addressing the question of whether the facts and circumstances surrounding the accident warranted a jury charge as to the defense of contributory negligence, we note that "the fact that a given charge is abstract is not available as reversible error unless it affirmatively appears from the record that the charge worked injury to the complaining party."Shannon v. Hollingsworth, 291 Ala. 159, 279 So.2d 428, 434
(1973). An examination of the record reveals that the trial court in the present case clearly informed the jury that if it found contributory negligence on the part of Roszell, then Roszell could not recover any damages from the defendants. In view of the fact that the jury awarded damages, which, as we have noted, were not inconsistent with the evidence, we cannot find that it affirmatively appears from the record that the charge as to the defense of contributory negligence worked injury to Roszell.
Roszell also contends that the trial court erred in excluding from the jury evidence of the cost of the medical insurance that paid part of her medical bills. We disagree.
At trial Roszell attempted to enter into evidence proof that the total cost of the premiums for the medical insurance that paid $2,905.30 of her $4,789.50 chiropractor bill was $4,516. The trial court, however, would not allow her to show this cost. Roszell cites as support for her entitlement to introduce such evidence § 12-21-45(a), Ala. Code 1975, which states that "upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses."
The insurance that paid Roszell's medical bills was a benefit provided by her employer; the premiums were paid by the employer. At trial Roszell asserted that she would be receiving this money in the form of income if it were not being provided as a benefit through her employer. The trial court, however, found such an assertion to be purely speculative and unproven and held that because Roszell had not shown that there was a cost to her in obtaining the insurance, the insurance coverage must be considered a fringe benefit paid for by the employer. The court then interpreted § 12-21-45(a) as not mandating admission into evidence of costs of obtaining payment of medical expenses when the costs are paid only by the employer.
Upon an examination of the record, we find that Roszell has failed to establish that the insurance benefits were provided at a "cost" to her as contemplated by § 12-21-45(a). In view of this, we find that evidence as to the cost of her insurance premiums was not improperly excluded by the trial court.
Roszell finally contends that § 12-21-45, Ala. Code 1975, is unconstitutional.
At the commencement of the trial, Roszell made a motion in limine that if the defendants, pursuant to § 12-21-45, solicited information concerning payment of Roszell's medical bills by a collateral source, she should be allowed to show that the defendants themselves had liability policies to reimburse them for any damages awarded against them. When the trial court denied Roszell's motion, she challenged the constitutionality of § 12-21-45 under the equal protection provisions of the Alabama and Federal Constitutions. The trial court ruled that the statute was constitutional.
In a proceeding where the constitutionality of a state statute is challenged, the attorney general of the state is entitled to be heard in the proceeding and must be served with notice. § 6-6-227, Ala. Code 1975. Although this requirement is found in the Declaratory Judgment Act, our supreme court has determined that service on the attorney general is mandatory and jurisdictional, regardless of whether the action was brought as a declaratory judgment action. Barger v. Barger,410 So.2d 17 (Ala. 1988). When a party challenges the constitutionality of a state statute and fails to serve the attorney general, the trial court has no jurisdiction to decide the constitutional claim, and its decree regarding that claim is void. Guy v. Southwest Ala. Council on Alcoholism,475 So.2d 1190 (Ala.Civ.App. 1985). A void decree *Page 517 
will not support an appeal to this court. Jones v. Sears,Roebuck Co., 342 So.2d 16 (Ala. 1977). Therefore, we have no jurisdiction to address the merits of Roszell's constitutional claim and decline to do so.
For the reasons noted above, the judgment of the trial court is due to be affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
THIGPEN, J., concurs.
ROBERTSON, P.J., dissents.