PITTMAN, Judge.
Deborah Glass, acting on behalf of her minor daughter, Laura Leigh Knight, appeals from a summary judgment entered by the Madison Circuit Court in favor of Jacquelynn Kristina Clark on claims of negligence and wantonness asserted against Clark.
In September 2009, Glass sued Clark, seeking damages on behalf of Knight for injuries Knight had suffered in a motor-vehicle accident while she had been riding in a motor vehicle operated by Clark.[1] Clark moved for a summary judgment. After conducting a hearing on that motion, the trial court entered a summary judgment in favor of Clark. In that judgment, the trial court concluded (1) that Knight had been a “guest” within the scope of Alabama’s Guest Statute, Ala.Code 1975, § 32-1-2, while riding in Clark’s vehicle when the accident had taken place and, thus, that Clark was entitled to a judgment as a matter of law as to Glass’s negligence *1076 claim; and (2) that Glass had failed to present substantial evidence to support her wantonness claim against Clark. Glass timely appealed; her appeal was transferred to this court pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Glass contends that the evidence adduced in connection with the summary-judgment motion presented a genuine issue of material fact as to whether Knight was a guest in Clark’s vehicle. Additionally, Glass asserts that substantial evidence of wantonness was adduced so as to subject Clark to liability notwithstanding the applicability of the guest statute. The record reveals the following undisputed facts. In June 2009, Knight invited Clark to go on a beach trip -with her, Glass, Glass’s fiancé, and Glass’s fíancé’s son on Wednesday, June 17, 2009, through Sunday, June 21, 2009. Knight accepted the invitation. Clark and Knight rode in Clark’s vehicle to their destination in Panama City Beach, Florida, while Glass and the others rode in a separate vehicle. Before the trip, the parties agreed that Glass would pay for Clark’s accommodations but that Clark would pay for her meals and gasoline during the trip.
The record reveals that on most nights during the trip (Thursday and Friday), Clark and Knight socialized with other young people, consumed alcohol, and smoked cigarettes until midnight each night; they awakened around 11:00 a.m. on Friday and on Saturday. On the last night of the trip, Knight and Clark did not go to bed until between 5:00 and 6:00 a.m. They smoked cigarettes while they were out that night, but no evidence was presented to suggest that they consumed alcohol. Glass testified that she did not recall smelling alcohol on them when they had gotten home that morning. Glass awakened Clark and Knight between 9:00 and 10:00 a.m. Glass testified that they seemed to be fine that morning but that they looked tired. Glass invited them to lunch and expressed her plans to stay for the day, but Clark wanted to go ahead and drive back to Huntsville to spend Father’s Day with her father. Knight testified at her deposition that she had wanted to stay and eat with Glass and the others but that Glass had ordered her to ride with Clark so that Clark would not drive back by herself. Knight testified that Glass was “kind of fussing over [Clark]” before they left, but her testimony did not indicate that any conversation had occurred between Glass and Clark; that was the only evidence made part of the record which so much as suggests that any conversation regarding Clark’s ability to drive had occurred between Clark and Glass before the girls left on Sunday. Glass testified at her deposition only that she had told Clark it was okay to go back to Huntsville (without Glass’s following her) so long as it was okay with Clark’s parents. Clark testified that she did not recall having any conversation with Glass in which Glass had raised concerns about her being too tired to drive or about her ability to drive and that she did not recall any conversation about Knight’s riding back to Huntsville with Clark solely so that Clark would not be making the drive alone. Clark further stated that she never discussed the possibility of being too tired to drive.
The record shows that Clark and Knight stopped approximately three times on their way to Huntsville. Knight testified that they had stopped to smoke cigarettes because they could not smoke in the vehicle. Knight stated that Clark never said anything to her about being tired or being too tired to drive. Clark stated that she did not feel tired and did not recall being fatigued at all; her father also testified that Clark had telephoned him on the way home and that she had not mentioned being tired to him. Clark testified that, be *1077 fore the accident, she had been listening to music, which she said was “not too loud” because Knight was sleeping, and “blasting cold air.”
Clark and Knight were involved in a single-car accident while traveling north on Interstate 65. The record reveals that the last thing Clark remembered was driving in the far right lane and Knight’s being asleep in the passenger seat. It is undisputed that, after the accident, Clark did not, and still does not, know whether she fell asleep at the wheel, blacked out, or was cut off by another driver. However, the affidavit of the state trooper who responded to the scene of the accident stated that Clark had told him that she had fallen asleep due to a lack of sleep the night before, which had caused her to lose control of the vehicle she was operating and had caused the vehicle to leave the roadway and roll down a hill. The notes of the paramedic who treated Clark at the scene of the accident, as well as the deposition transcript of the emergency-room doctor who treated Clark, report that the accident occurred after Clark had fallen asleep at the wheel. When asked about the statements recorded by the aforementioned authorities at the scene, Clark stated that she did not recall telling anyone that she had blacked out and that she knew that Knight had assumed she had fallen asleep, so she had simply gone along with that scenario when being questioned by the authorities. Knight sustained permanent injuries as a result of the accident.
It is well settled that an appellate court is to review a summary judgment de novo, using the same standard applied by the trial court. Neal v. Sem Ray, Inc., 68 So.3d 194, 196 (Ala.Civ.App.2011). Under Rule 56(c), Ala. R. Civ. P., we must review the evidence to determine whether the movant established that no genuine issue of material fact existed, thereby entitling the movant to a judgment as a matter of law. If the movant makes that showing, the nonmovant thereafter bears the burden to adduce “substantial evidence” to rebut the movant’s contention that there is no genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin Cnty., 538 So.2d 794, 797-98 (Ala.1989). “[Sjubstan-tial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
We begin by addressing the issue whether Knight was a guest in Clark’s vehicle under Alabama’s guest statute. That statute, Ala.Code 1975, § 32-1-2, provides:
“The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation of said motor vehicle.”
In Neal v. Sem Ray, Inc., supra, this court reviewed a trial court’s summary judgment in favor of a driver on a negligence claim asserted by an occupant of that vehicle, in which the trial court concluded that, as a matter of law, the occupant had been a guest. In that case, the occupant and the driver were cousins. The driver, employed as a dump-truck driver, had initially asked the occupant’s mother to accompany her on a job-related delivery; the occupant instead accompanied the driver on the delivery because the occupant’s mother could not go and re *1078 quested that she go in her place. The driver and the occupant were involved in an accident during the delivery trip, injuring the occupant and prompting her action against the driver.
We affirmed the summary judgment entered in the driver’s favor in Neal. In that opinion, we elaborated on the definition of the term “guest,” as it is used in § 82-1-2:
“ j « generai ruie is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, goodwill or the like, on the person furnishing the transportation, the rider is a guest; but if his carriage tends to promote the mutual interest of both himself and the driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a passenger and not a guest.’ ”
“ ‘Quoting Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87 (1949).’ ”
Neal, 68 So.3d at 198 (quoting Cash v. Caldwell, 603 So.2d 1001, 1003 (Ala.1992)). We proceeded to discuss Cash v. Caldwell, supra, in which our supreme court had held that a genuine issue of material fact existed as to whether two riders in a motor vehicle were guests of the driver; in that case the two riders, a husband and a wife, had taken a cross-country trip from California in their mobile home and had planned to stop in Alabama to visit the husband’s ailing mother. When the pair reached Texas, the husband’s sister, the driver, asked them to continue on to Alabama because she needed them to help her with her and the husband’s sick mother. One evening when the sister was driving home with the riders from the hospital where the sister and the riders had been visiting the mother, the vehicle she was operating was involved in an accident. Our supreme court concluded:
“[Those] facts ... would permit a fact-finder to conclude that the [riders] were promoting their own mutual interest and that of their sister and sister-in-law in caring for [the] ailing mother. They establish that [the driver] asked [the riders] to come to Birmingham earlier than they had planned to, in order to help her with the care of the ailing mother. We cannot say, as a matter of law, that the [riders] were ‘guests’ within the meaning of the Guest Statute under these circumstances. Whether the [riders] were guests or were passengers is a question for the jury.... Roe v. Lewis, 416 So.2d 750 (Ala.1982); Sellers v. Sexton, 576 So.2d 172 (Ala.1991).”
Cash, 603 So.2d at 1003. Our supreme court further stated that, “ ‘ “ ‘where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a passenger and not a guest.’ ” ’ ” Id.
Relying on Cash v. Caldwell, the occupant in Neal argued that she had been a passenger and that the evidence was sufficient for the trier of fact to conclude that the driver had asked her to ride in order to render a service to the driver by keeping the driver company while fulfilling the objective of the driver and the driver’s employer. On the other hand, the driver asserted that the occupant had been a guest because the trip was purely social; that the occupant had accompanied the driver at the behest of the occupant’s *1079 mother; and that the driver’s only benefit derived from the occupant’s riding with her was companionship, which, the driver contended, was only incidental rather than material or tangible. We disagreed with the driver’s contentions that the evidence supported the conclusion that the trip was purely social and that the occupant had accompanied the driver only at the insistence of the rider’s mother because there was evidence indicating that purpose of the trip was so that the driver could perform a job-related duty and the fact-finder could have concluded that the occupant had accompanied the driver at the driver’s insistence. However, we agreed with the driver’s argument that the undisputed evidence demonstrated that the “only benefit [the occupant had] provided to [the driver] was companionship.” Neal, 68 So.3d at 199.
In the present case, Glass argues that she had agreed with Clark’s parents to certain arrangements regarding the trip before they left and that the fact that they had entered into such an agreement rendered Knight a passenger, rather than a guest, in Clark’s vehicle. Clark, on the other hand, asserts that Knight was a guest in Clark’s vehicle because (a) Knight would not have gone to the beach unless Clark had accompanied her, (b) Clark did not ask Knight to share the cost of gas with her, (c) Knight did not share the cost of gas with Clark, (d) Knight’s accompanying Clark on the ride back to Huntsville gave Clark only the benefit of companionship, and (e) there was no business relationship or purpose underlying Knight’s having accompanied Clark on the ride home. Glass relies heavily on Sellers v. Sexton, 576 So.2d 172 (Ala.1991), in which the driver and the rider were friends from the same hometown who attended the same college; the facts established that the driver and the rider traveled together on at least three out of four weekends each month, that the driver routinely drove her car home, and that the rider’s mother would pay the driver $10 per trip. In addressing the issues in Sellers, our supreme court discussed the general principle “that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, goodwill or the like on the [driver], the rider is a guest,” Sellers, 576 So.2d at 174; our supreme court further explained that
“the sharing of the cost of operating a car on a trip, when the trip is undertaken for pleasure or social purposes and the invitation is not motivated by, or conditioned on, such sharing, is nothing more than the exchange of social amenities and does not transform into a passenger for hire one who, without the exchange, would be a guest. However, where the offer of transportation is conditioned on the passenger’s contribution toward the expenses, or where it appears that the arrangement for transportation bears one or more of the indi-cia of a business arrangement, especially where the arrangement is specifically for transportation, or comprehends a trip of considerable magnitude, or contemplates the repetition of more or less regular rides, the person paying for gasoline and oil consumed or contributing toward other automobile expenses is held to be a passenger for hire and not a guest. This is true even though the ultimate purpose of the arrangement may be for pleasure. Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244 (1954).”
Sellers, 576 So.2d at 174.
In Sellers, our supreme court held that a question of fact existed because, although the driver and the rider were friends and often engaged in social activity together, there was in place “an arrangement for *1080 transportation that contemplated regular trips of considerable magnitude” and, thus, the fact-finder “could consider the relations between the driver and the passenger, such as: implied and expressed arrangements made between them as to the conduct of the particular trip, the purpose of the trip, the benefits accruing to the driver and to the passenger from the trip, and any other factors that bring into popular focus the true status of the driver and the passenger at the time of the accident.” Sellers, 576 So.2d at 174-75 (citing Roe v. Lewis, 416 So.2d 750 (Ala.1982)).
Glass contends that the agreement reached between Clark’s parents and herself before the trip in this case parallels the agreement between the parties in Sellers such that the circumstances of this case, at the very least, raise an issue of fact as to whether Knight was a passenger or a guest in Clark’s car on the ride home, as the circumstances in Sellers did; specifically, Glass’s contention is that, like the mother of the rider in Sellers, Glass “paid” for Clark’s gasoline by covering the accommodation costs during the trip. Even though the parties in the present case agreed that Clark would pay for her own gasoline and meals and that Glass would cover Clark’s accommodations on the trip, the facts of the present case are significantly different from the facts in Sellers. Crucially, in Sellers, the driver and the rider were being transported to a destination to which they shared an equal interest in arriving: college. Even if the rider in Sellers had not ridden with the driver, the rider nonetheless would have engaged in some form of transportation to get to college; the driver and the rider merely planned a routine for traveling together from which they each derived a mutual benefit. Here, however, it is undisputed that Knight invited Clark on the trip because, otherwise, Knight did not want to go; in other words, but for Knight’s having extended an invitation to Clark, Knight might not have gone to Panama City Beach and Clark certainly would not have gone there at all. Therefore, the arrangement in Sellers reflects an exchange that mutually benefited both the rider and the driver, whereas in this case Clark’s taking her car to the beach and Knight’s riding with her was so that Knight would accept her mother’s vacation offer, and Knight’s riding with Clark on the return trip was merely incidental to that. Like Neal, the undisputed evidence in the present case establishes that the only benefit Clark received from being accompanied by Knight was companionship.
In Neal, after determining that the driver’s sole benefit derived from being accompanied by the rider was companionship, we then looked to the issue of “whether, as a matter of law, a rider is a guest ‘ “ ‘where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or service to the driver [solely in the form of companionship] on a trip which is primarily for the attainment of some objective of the driver.””” Neal, 68 So.3d at 199 (quoting Cash, 603 So.2d at 1003). Our discussion in Neal was as follows:
“In Klein v. Harris, 268 Ala. 540, 545, 108 So.2d 425, 429 (1958), our supreme court stated:
“ ‘As said in Blair v. Greene, 247 Ala. 104, 22 So.2d 834 [(1945)], quoting from another case, if the trip is for any benefit to the driver (defendant), conferred or anticipated, it is sufficient to take the case out of the guest statute. But it is said in Sullivan v. Davis, 263 Ala. 685, 83 So.2d 434, 437 [ (1955) ] that a mere incidental benefit to the driver is not sufficient. The benefit thus conferred must in some way have induced the driver to extend the offer to the rider. It must be *1081 “material and tangible and must flow from the transportation provided”.’
“However, the parties have not cited any cases specifically addressing the issue whether companionship is merely incidental or is material and tangible for purposes of determining whether a rider is a passenger or a guest. Our research has not located an Alabama case on point; however, we have located a decision of the Ohio Supreme Court that provides guidance. In Stiltner v. Bahner, 10 Ohio St.2d 216, 227 N.E.2d 192 (1967), the driver had telephoned the rider at a bar-restaurant and asked the rider to spend the night at the driver’s home because the driver was lonely. The rider refused the driver’s request; however, the driver drove to the bar-restaurant and, by repeated requests, persuaded the rider to spend the night at the driver’s home. While the rider was riding with the driver en route to the driver’s home, an accident occurred and the rider was injured. The rider then sued the driver, stating a claim of negligence. The trial court directed a verdict in favor of the driver based on the Ohio Guest Statute, which was then in effect. The rider appealed to the Ohio Court of Appeals, which reversed the judgment of the trial court. The driver then appealed to the Ohio Supreme Court. Reversing the judgment of the Ohio Court of Appeals, the Ohio Supreme Court stated:
“ ‘The first question to be determined is whether the evidence was such as to enable reasonable minds to conclude that [the rider], at the time of the accident in which she was injured, was riding in [the driver’s] automobile as “a guest ... while ... being transported without payment” for her transportation, within the meaning of those words as used in the Ohio Guest Statute, Section 4515.02, Revised Code.
“ ‘Payment, within the meaning of Section 4515.02, Revised Code, must be payment or benefit accepted or agreed upon by the driver as consideration for the transportation. However, such payment or benefit need not be money. It is sufficient that the guest, by his presence in the automobile, renders service or assistance intended to primarily benefit the driver, or intends to render service or assistance at the destination which will primarily benefit the driver, or has before the trip rendered such service or assistance, if the benefit or service is material, as distinguished from a mere social benefit, or nominal or incidental contribution to expenses.
“ ‘In the instant case, no money was agreed upon as consideration. A non-monetary benefit of a rider’s company, society or companionship is not such a material consideration as may constitute payment and remove the rider from the status of “a guest ... being transported without payment therefor.”
“ ‘If we were to hold that [the rider] in the instant case was not a guest “being transported without payment therefor,” then any time a driver-host, desiring to attend a social or sporting event or even watch T.V. at home but wanting companionship, should persuade a reluctant friend to join him, the friend, while being transported for such purpose, would be a paying guest.
“ ‘A reluctant guest may still be a guest within the meaning of the guest statute; and the fact, that the host-driver is much more interested in having the rider’s social companionship than the rider is in giving that social *1082 companionship, cannot support a conclusion either that the rider is not a guest or that he is paying for his transportation.
“ ‘The Court of Appeals in the instant case relied upon its unreported opinion in Hogan v. Finch, which was affirmed in 8 Ohio St.2d 31, 222 N.E.2d 638 (1966). However, there, the [driver] agreed to transport [the rider] to her home, if the [rider] would look after [the driver’s] younger brother at a swimming club. The [rider] there was not giving only the pleasure of her company, but had performed a material service for the driver in return for her transportation.
“ ‘We conclude that, where a driver by repeated requests persuades a friend to go in the driver’s vehicle to spend the night at the driver’s home because the driver is lonely, and where no other service is to be performed by the friend, and no benefit other than his company is to be conferred upon the driver, such friend, as a matter of law, becomes a guest “being transported without payment therefor” within the meaning of the Ohio Guest Statute.’
“[Stiltner ], 10 Ohio St.2d at 218-20, 227 N.E.2d at 194-95.
“We find Stiltner persuasive and conclude that, because the only benefit [the occupant’s] riding with [the driver] conferred on [the driver] was companionship, [the occupant], as a matter of law, was a guest in the dump truck driven by [the driver]. Accordingly, we affirm the ... summary judgment in favor of [the driver] with respect to [the occupant’s] claim of negligence in the operation of the dump truck.”
Neal, 68 So.3d at 199-201 (footnote omitted).
In Neal, despite there being a question as to whether the occupant had ridden with the driver at the instance of the driver or at the instance of the occupant’s mother, we nonetheless affirmed the summary judgment in favor of the driver on the ground that the occupant had been a guest in the vehicle. In this case, the evidence clearly establishes that Knight accompanied Clark at the instance of Glass, as the record reveals no evidence to suggest that Clark asked Knight to ride back to Huntsville with her, much less that Clark — being 18 years old — would not have driven back to Huntsville had Knight not ridden with her; regardless of Knight’s motivation for agreeing to ride with Clark, the evidence is undisputed that Glass, not Clark, was the one who encouraged Knight to accompany Clark. Clark’s desire to drive back to Huntsville that morning was because she wanted to spend Father’s Day with her father and was in no way dependent on whether Knight accompanied her on the drive. Therefore, the facts of this case are even stronger than those present in Neal in support of the proposition that the injured vehicle occupant was a guest, rather than a paying passenger. We therefore affirm the summary judgment in favor of Clark as to Glass’s negligence claim.
Next, we look to whether the trial court erred in determining that there was no substantial evidence demonstrating that Clark’s operation of the motor vehicle was wanton. In her brief, Glass asserts that, “[u]nder the circumstances of this case, it may be reasonably inferred that Clark knew she was too tired to drive and continued to drive anyway.” Clark responds that the trial court did not err because, she posits, no evidence, much less substantial evidence, was presented to suggest that she was conscious that her small amount of sleep the night before presented a danger from which she knew an injury would like *1083 ly occur. Both parties’ briefs discuss pertinent caselaw regarding this issue at length.
Glass’s brief relies primarily on Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968), in which the driver, like Clark, was unable to recall what had happened leading up to an automobile accident. In that case, the record showed that the driver had had very little sleep during the two nights before the accident because he had worked both nights as a piano player and singer; it was undisputed that he was an experienced driver, that he had been losing sleep, and that he had been awake since the early morning of the day before the accident, which had occurred sometime after 12:30 a.m. following his having left the club where he had worked and immediately embarking upon the 80-mile drive from Atlanta, Georgia, to Anniston. Glass also cites Gunnells v. Dethrage, 366 So.2d 1104 (Ala.1979), in which the issue of wantonness was submitted to a jury on the basis of evidence indicating that the driver had dozed off a few times while driving but had, nonetheless, continued to drive.
In Lankford, which addressed as an issue of first impression whether the evidence was sufficient to warrant submission of the issue of wantonness to a jury, the court explained the significance of evidence indicating that a driver had fallen asleep at the wheel as a basis for a wantonness claim, distinguishing it from the nature and extent of evidence sufficient to establish negligence on the part of the driver. Our supreme court explained that to make a prima facie case of wantonness, as opposed to negligence,[2] requires evidence establishing not only that a driver fell asleep while driving, but also that that driver “ ‘continued to drive in reckless disregard of premonitory symptoms,’ ” further explaining that, “‘if it appears that the driver ... has been without sleep for a considerable period of time and has experienced symptoms of the approach of sleep, the fact that he continues to drive under such circumstances has been held to manifest a wilful and wanton disregard for the safety of others....’” Lankford, 283 Ala. at 26-27, 214 So.2d at 303 (quoting C.T. Drechsler, Annotation, Physical Defect, Illness, Drowsiness, or Falling Asleep of Motor Vehicle Operator as Affecting Liability for Injury, 28 A.L.R.2d 12, 72 (1953)). The evidence in Lankford of the driver’s lack of sleep for the nearly 24-hour period leading up to his accident, his very little sleep before that, and his keen awareness of the effect that that lack of sleep was having on him, when considered with his being an experienced driver, was enough to permit the issue of wantonness to be submitted to the jury. Similarly, in Gunnells, the driver had continued to drive even though he was conscious of the fact that he had dozed off a few times already.
Clark answers Glass’s assertions, arguing that Glass failed to present substantial evidence sufficient to permit the issue of wantonness to be resolved by the fact-finder. In support of that position, Clark directs us to two cases in which our courts *1084 have clarified and distinguished Lankford and Gunnells in holding certain evidence insufficient to raise a question of fact as to wantonness. Clark points to Tew v. Jones, 417 So.2d 146 (Ala.1982), in which the court held that evidence that a particular delivery driver had worked from 2:00 a.m. until the time of the accident at 5:30 p.m. was not enough by itself to raise a question of fact as to the issue of wantonness when there was no evidence indicating that the driver had “ 'consciously and intentionally [committed] some wrongful act or omitted some known duty which produced the injury.’ ” 417 So.2d at 147. Additionally, Clark cites Roszell v. Martin, 591 So.2d 511 (Ala.Civ.App.1991), a case in which this court addressed facts similar to the facts in the present case; in Roszell, a 16-year-old driver had had only 2 hours of sleep in the 36-hour period leading up to an accident in which she was involved. Although we acknowledged that the driver’s lack of sleep during that extended period could support an inference that the driver had knowingly experienced premonitory symptoms by merely having knowledge of her own lack of sleep, we nonetheless held that such an inference was not sufficient to establish that the driver had “ ‘realized the onset of] “premonitory symptoms” of sleep.’ ” Roszell, 591 So.2d at 513 (quoting Tew, 417 So.2d at 147).
Caselaw thus affords a spectrum within which the present case must fall. On one end are Lankford and Gunnells, cases in which evidence was adduced indicating that the pertinent drivers had knowingly experienced drowsiness or sleepiness, yet continued to drive. On the other end are Tew and Roszell, in which evidence would allow an inference to be drawn that the pertinent drivers fell asleep at the wheel but not that they had had a ‘“consciousness or awareness of sleepiness, tiredness, and fatigue [yet] continued to drive with reckless indifference to the consequences.’ ” Roszell, 591 So.2d at 513 (quoting Tew, 417 So.2d at 146). The touchstone is the knowledge of the pertinent driver: “Even under the old ‘scintilla rule,’ [Alabama] required that there be a legitimate inference of knowledge of premonitory symptoms before submitting the issue of wantonness to a jury.” Roszell, 591 So.2d at 513.[3]
In her brief, Glass asserts that “Clark knowingly got on the road after partying all night, having only four hours of sleep, and admitted to feeling sleepy prior to falling asleep at the wheel,” and she posits that, based on those facts, it can be inferred that Clark had knowledge of premonitory symptoms of sleep.
Glass’s contentions regarding the factual basis of the wantonness claim are simply inconsistent with the evidence presented. Glass admits in her brief on appeal that Clark did not recall what caused her to run off the road. Also, there was no evidence presented to support the assertion that Clark had been “partying” at all the night before the accident; the record establishes only that Clark had smoked cigarettes the night before the accident. Moreover, there was no evidence presented indicating that Clark had felt sleepy at any time the day of the accident, much less that she had “admitted feeling sleepy prior to falling asleep at the wheel.” The only evidence in the record even remotely suggesting that Clark experienced sleepiness that day is Glass’s testimony that she thought Clark and Knight had looked tired when they woke up that morning. Although Glass, in her brief, claims that she expressed concern to Clark about Clark’s being too tired to drive, no evidence was *1085 presented to substantiate that claim; in fact, Glass’s deposition testimony does not indicate that she was concerned that Clark was too tired to drive, nor does it indicate that she expressed any concern regarding Clark’s ability to drive to Clark before Clark and Knight departed. Although there are reports in the record that suggest that Clark may have indeed fallen asleep while driving, no evidence was presented to suggest that she had experienced premonitory symptoms of sleepiness before the accident. In fact, the undisputed facts suggest the opposite: Clark had stopped during the trip about three times and had spoken to her father while driving; during those stops and telephone calls, Clark never mentioned to her father or to Knight that she felt or might be tired or that she felt that her ability to drive was in any way impaired.
The evidence presented by Glass is not substantial evidence sufficient to create a genuine issue of material fact as to wantonness because it does not establish a sufficient factual basis for a finding that Clark knowingly experienced premonitory symptoms indicating to her that she was sleepy or drowsy and that she continued to drive with reckless disregard of that knowledge. Therefore, on the authority of Tew and Roszell, we conclude that the trial court correctly entered the summary judgment in favor of Clark as to Glass’s claim of wanton conduct.
In light of the foregoing facts and authorities, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., concurs.
BRYAN, J., concurs in the result, without writing.
MOORE, J., concurs in part and dissents in part, with writing, which THOMAS, J., joins.

. Glass also asserted claims of vicarious liability; negligent entrustment; and negligent hiring, training, and supervision against Colby Development, Inc. The trial court entered a summary judgment in favor of Colby Development as to all claims against it. That judgment has not been challenged on appeal.

. In Lankford, reiterating the holding in Whiddon v. Malone, 220 Ala. 220, 223, 124 So. 516, 518 (1929), the court opined that " 'going to sleep at the wheel while operating a car is evidence of negligence. The dangers of running a car while asleep are so obvious as to need no comment. It is the duty of the driver to keep awake or cease to drive. A failure so to do is prima facie evidence of negligence.' ” 283 Ala. at 26, 214 So.2d at 302-03. We need not discuss the sufficiency of the evidence in this case with regard to negligence because we have already determined that, as a matter of law, Knight was a guest in Clark's vehicle at the time of the accident at issue in this case, thus triggering the bar of the guest statute to Glass's negligence claim.

. Prior to June 11, 1987, the scintilla rule, rather than the current substantial-evidence rule, applied in civil actions. See § 12-21-12, Ala.Code 1975.