633 So.2d 1011 (1994)
Clifteen TRIPLETT, Individually and As Administratrix of Estates of Sherron Annette Triplett, Deceased and De Obra Schree Hornesburger, Deceased
v.
Chester DEMPSEY, d/b/a Liberty Transportation, Inc., and/or Liberty Transportation, Inc.
No. 90-CA-1277.
Supreme Court of Mississippi.
February 3, 1994.
Rehearing Denied April 14, 1994.
Rhonda C. Cooper, Isaac K. Byrd, Jr., Pieter Teeuwissen, Byrd & Associates, Jackson, for appellants.
J. Price Coleman, James E. Welch, Jr., Daniel Coker Horton & Bell, Jackson, for appellees.
*1012 Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
Clifteen Triplett, individually and as administratrix of the estates of Sherron Triplett and De Obra Hornesburger, brought suit against Charles Dempsey, President of Liberty Transportation, Inc., and/or Liberty Transportation, Inc., alleging that the negligence of its driver, Terry Bryant, resulted in the wrongful death of the decedents. The trial court entered summary judgment against Triplett on November 7, 1990. She now raises the following errors on appeal:
1. The trial court erred in summarily finding that Decedents were unauthorized passengers, and therefore, trespassers; and,
2. The trial court erred in summarily holding that the actions of Bryant in driving the truck were not willful and wanton or gross negligence.

FACTUAL BACKGROUND
On August 15, 1988, Terry Bryant (Bryant) was employed by Liberty Transportation, Inc. (Liberty), a trucking company located in Louisville, Mississippi. On this day Bryant was driving an eighteen wheel semi owned by Liberty, transporting particle board from Louisville, Mississippi, to Morristown, Tennessee. He was accompanied by his girlfriend, the deceased Sherron Triplett (Sherron) and her child, the deceased nineteen month old De Obra Hornesburger (De Obra).
Chester Dempsey (Dempsey), owner of Liberty Transportation, dispatched Bryant at approximately 11:30 P.M., August 14, 1988. Dempsey claims that he did not know that either Sherron or De Obra would be accompanying Bryant on this delivery.
Bryant drove approximately 150 miles towards Morristown and stopped for a brief rest in Bessemer, Alabama, after which he resumed his course towards Morristown. Bryant pulled the rig over on the shoulder of the highway at 3:00 A.M. and slept in the sleeper compartment of the truck until he was awakened by Sherron at 5:00 A.M. He then continued on Highway 14 for approximately one hour.
As Bryant approached Fort Payne, Alabama, his truck veered off the right side of the road. He quickly tried to steer back onto the highway, but was unsuccessful; his truck struck a tree and flipped onto its side. Bryant maintained that he does not know how the accident occurred, but that he was not speeding because his truck, owned and provided by Liberty, was governed for a maximum speed of 64 miles per hour.
Sherron Triplett was pronounced dead at the accident scene and her daughter, De Obra, died shortly thereafter. Bryant escaped permanent injury and, prior to returning to work, he spent eight weeks recovering in Texas.
On June 5, 1988, Sherron signed a form executed by Dempsey and his secretary, Judy Stovall, in the presence of Bryant, Stovall and Dempsey, which purported to absolve Liberty of liability for anything which might happen to Sherron in the event she accompanied Bryant in his truck. The form, although dated June 5, stated nothing with particularity regarding which delivery it applied to, the duration of its authority, or whether or not it was meant to be prospective in nature. Dempsey contends he did not know Sherron would be on the truck on August 15, but also maintains that the form was prospective in nature, and thereby waived her rights to sue after June 5, 1988. Dempsey concedes that the waiver form did not apply to De Obra, but emphatically stated that under no conditions would he have allowed a nineteen month old child to ride as a passenger in one of Liberty's trucks.
The form signed by Sherron Triplett was executed on Liberty stationery, dated June 5, 1988, and stated the following:
I, Sherron Triplett, do resent to sign this as a disclaimer statement to any monies resulting from anything involving Liberty Transportation, Inc. As a rider with T. Bryant I will in no way look to Liberty Transportation, Inc. or anyone involved with Liberty Transportation, Inc. for any monies. I am riding with T. Bryant of my own free will and realize that Liberty Transportation, Inc. Insurance does not cover me as a passenger.
*1013 The form was signed by both Bryant and Sherron as well as Dempsey, who signed in his capacity as President of Liberty. Judy Stovall notarized the signatures.
Clifteen Triplett (Triplett) alleges Dempsey knew Sherron would be riding with Bryant on more than the occasion of June 5, 1988. Furthermore, with regard to De Obra, Bryant testified that Judy Stovall, Dempsey's secretary, knew Sherron would be taking her on deliveries with Bryant as she would not leave the baby behind. Triplett argues that based on Judy Stovall's knowledge that De Obra would accompany Sherron on trips with Bryant, Dempsey also knew or should have known it also.

I.

DID THE TRIAL COURT ERR IN SUMMARILY FINDING THAT THE DECEDENTS WERE UNAUTHORIZED PASSENGERS, AND THEREFORE TRESPASSERS?
The trial court, in granting summary judgment in favor of Dempsey d/b/a Liberty, ruled that Sherron and De Obra were unauthorized passengers, and as such were trespassers. The court further found that since the decedents occupied the status of trespassers, only evidence of willful, wanton, or gross negligence on behalf of defendant's employee would establish the breach of duty element of Triplett's case. Finding that Triplett failed to show Bryant's conduct was willful, wanton or grossly negligent, the court held that there was no breach of duty and granted summary judgment.
Rule 56(c) of the Mississippi Rules of Civil Procedure states that the moving party is entitled to summary judgment as a matter of law when there are no genuine issues of material fact supporting the non-moving party's claim. Mantachie Natural Gas District v. Mississippi Valley Gas Company, 594 So.2d 1170, 1172 (Miss. 1992). We review the record de novo when determining whether or not the trial court properly ruled on a motion for summary judgment, and in our de novo review will:
look[] at all the evidentiary matters before [us]  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.
Id. at 1172; citing Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989) [citing Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61 (Miss. 1988)]. The trial court should overrule a motion for summary judgment unless it finds, beyond any reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim. McFadden v. State, 580 So.2d 1210, 1214 (Miss. 1991). Additionally, it is important to note that "the [trial] court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." Brown v. Credit Card Center Inc., 444 So.2d 358, 362 (Miss. 1983); citing The Advisory Committee Comment to M.R.C.P. 56. If any triable issues of fact exist, the trial court's decision will be reversed. Id.
In the instant case, the trial court found that Dempsey did not have knowledge that Sherron and De Obra were accompanying Bryant on the August 15, 1988, delivery. Based on this factual determination, the court concluded that the passengers were trespassers. The question of status of the victims is crucial to a determination of the issues presented in this case. If, in fact, Sherron and De Obra were in defendant's truck unbeknownst to Dempsey, and were therefore trespassers, Liberty only owed a duty not to injure them as a result of willful, wanton, or gross negligence of its employee, Bryant. Mitchell v. Eagle Motor Lines, Inc., 228 Miss. 214, 229, 87 So.2d 466 (1956). *1014 However, if Dempsey was on notice that Sherron and De Obra would be riding with Bryant, the victims were owed the higher duty of ordinary, reasonable care; i.e., the general negligence standard. Vick v. Cochran, 316 So.2d 242, 248-249 (Miss. 1975).
Liberty asserts that company policy prohibits transporting unauthorized passengers, and Dempsey stated that he was unaware that either Sherron or De Obra would be accompanying Bryant on his August 15, 1988, delivery. Liberty also maintains that there was never a discussion, nor permission given, concerning De Obra as a passenger on Bryant's semi. Dempsey furthermore states that he would not, under any circumstances, have allowed De Obra to ride with Bryant. Bryant testified that he explained to Sherron that if she wanted to ride with him she would have to sign the form. Dempsey claims to have taken precautions to be sure Sherron understood the nature of what she was signing. According to Bryant's deposition, Sherron stated "well, just let me have the paper, let me sign it because I want to go."
Liberty's argument is that there is no evidence which establishes that on August 15, 1988, Dempsey had authorized or consented to Sherron riding as a passenger in the vehicle Bryant was operating. Dempsey contends that at no time prior to August 15, 1988, did he consent to Sherron riding as a passenger. He states that Sherron was given permission to ride as a passenger on June 5, 1988, as a result of signing the June 5, 1988, waiver form, but that this permission was exclusively limited to that date, as company policy mandated a waiver form be signed each time a passenger was to accompany a Liberty driver. Thus, since Liberty policy was not followed, decedent Sherron was an unauthorized passenger; i.e., a trespasser.
Regarding De Obra, Liberty concedes that the waiver form signed by Sherron has no effect on De Obra's status. However, Liberty argues that since there was no knowledge on its part that the child would ever be a passenger on Bryant's truck, she was clearly a trespasser.
While arguing that the form executed by Sherron only permitted her to ride with Bryant on June 5, 1988, Liberty simultaneously asserts that this same form applied prospectively, and thereby waived her rights to sue after June 5, 1988. It is admitted by Dempsey that he had been under great pressure for some time to allow Sherron to ride with Bryant.
Rule 192.60 of the Interstate Commerce Commission Safety Regulations mandates that when a motor carrier is authorized to carry a passenger, the authorization shall establish the name of the transported person, the start and end points for the transportation, and the date the authority to ride expires. Dempsey testified that each time Sherron was to accompany Bryant as a passenger in the semi, she was to sign a waiver form excusing Liberty from any liability for injuries which might arise out of the trip. Liberty maintains that each time a form is executed, the person executing the form is given permission by Dempsey, as President, to ride as a passenger on a Liberty vehicle. Liberty argues that this is the only way in which it can be apprised of the instances in which it will consent to passengers being carried in its vehicle.
However, while Liberty argues that permission can only be granted on the basis of each individually executed form, they also contend that the waiver of liability nonetheless holds true for all future claims and monies which might be asserted against Liberty. Liberty's argument is inconsistent in that this singularly executed form cannot serve as consent and permission for a passenger only on the date specified and thereafter also serve to waive liability for all future trips.
If indeed Liberty is relying on the June 5, 1988, form as a waiver of its liability for the wrongful deaths which arose out of the August 15, 1988, accident, then by acknowledging that this original form served as a waiver of rights arising out of an incident two months later, Liberty must also acknowledge that this original form continued to serve as written permission for Sherron to accompany Bryant. Thus, Liberty arguably would have had knowledge that Sherron could and would ride again and is now estopped from asserting *1015 that she was unauthorized as a passenger and occupied the status of a trespasser.
There is a genuine issue of material fact as to whether Liberty was on notice that Sherron would ride on trips with Bryant after the June 5, 1988, trip, especially considering: (1) Bryant confronted Dempsey on many occasions asking that Sherron be allowed to ride with him  this, coupled with the fact that the terms in the waiver form are ambiguous, creates an arguable inference that Dempsey was on notice that she intended to ride on more than just one trip; (2) the form executed by the parties does not conform to Interstate Commerce Commission standards in that it is ambiguous with regard to the start and end points for the transportation and does not state the date of the authority expiration; (3) Liberty on one hand claims that the form applied to all future trips after June 5, 1988, and on the other hand that they were not put on notice that Sherron was, and would continue to be, riding with Bryant.
Liberty cites Mitchell v. Eagle Motor Lines, Inc., 228 Miss. 214, 87 So.2d 466 (1956), in support of its proposition that Sherron occupied the status of a trespasser. In that case, Mitchell, the deceased, contacted a friend who drove an Eagle Motor Lines vehicle about a ride from Alabama to Texas. In turn, his friend contacted Howell, another operator for Eagle, who said he would give Mitchell a ride if this was permitted by the owner of the truck, the lessor to Eagle. The owner agreed and Mitchell rode from Birmingham to Meridian with Howell and thereafter from Meridian towards New Orleans with another Eagle operator, Boatman. Between Meridian and New Orleans, an accident occurred in which Mitchell was killed inside the Eagle operator's truck. Id. at 229, 87 So.2d 466.
This Court concluded that Eagle did not give permission for the deceased to ride in the vehicle operated by Boatman and that at the time the decedent was killed, he occupied the status of a trespasser. Id. at 230, 87 So.2d 466. The facts of the instant case are distinguishable in that it is uncontested that Dempsey permitted Sherron to ride with Bryant on June 5, 1988. The question that remains is whether Dempsey knew she would be riding with Bryant on trips after June 5, 1988. The foregoing analysis leads this Court to conclude that there are genuine issues of material fact existing as to the terms, party interpretations and duration of the form which Liberty executed and Sherron signed on June 5, 1988. Proper factual determination of these issues directly correlates to whether or not Liberty was on notice that Sherron would continue to ride with Bryant, which will in turn establish the status of Sherron Triplett in Bryant's truck on August 15, 1988. It was error for the trial court to exchange its summary judgment ruling for a proper determination of these genuine issues of material fact by a jury. Brown, 444 So.2d 358.
With regard to the status of the nineteen month old De Obra, Triplett and Dempsey hold completely opposite positions as to whether Dempsey had knowledge that the baby would be in Bryant's truck on her trips with Sherron. Dempsey, in his deposition, was adamant in stating that he never would have permitted De Obra to accompany Bryant on a delivery. Triplett claims that the circumstances surrounding the execution of the form signed by Sherron should have put Dempsey on notice that the baby would be with her mother in the truck. Bryant testified in deposition as follows:
Q. Who at Liberty was this signed in the presence of?
A. Ms. Stovall
Q. Did she explain to either of you 
A. She explained to both of us.
Q. What did she say to you in explaining it to you?
A. To read it carefully, and that you're giving up your rights to sue of monies, you know.
Q. Did she explain that to Sherron?
A. Sherron was standing right there, because we had to sign it in front of her.
Q. Did Sherron make any comments relative to that?
A. She said, "Well, just let me have the paper, let me sign it, because I want to go."

*1016 Q. Did you explain it to  I forgot your name.
MS. STOVALL: Stovall, Judy Stovall.
Q. (By Mr. Byrd) Ms. Stovall that the baby was going to be taken?
A. Yeah. Sherron wasn't going to leave the baby.
Q. You explained that to Ms. Stovall?
A. About the baby going?
Q. Yes Sir. Think carefully now.
A. I don't remember.
Q. There is nothing on that paper which indicates there's any authorization for the baby's being a passenger, is it?
MR. COLEMAN: We will stipulate that the form is just a release as to the mother.
MR. BYRD: It's not a release as to the baby?
MR. COLEMAN: It is not a release as to the baby. There is no question about that.
Dempsey stated in deposition that he was present when the form was being signed by all the parties. Therefore, it is at least plausible that he had knowledge that De Obra would be in the truck with Sherron and Bryant.
In Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss. 1988) [citing Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss. 1986)], this Court stated:
[a]ll motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment is sought should be given the benefit of every reasonable doubt.
"Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989) [citing Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61 (Miss. 1988)].
The record leaves inconclusive the question of fact as to whether or not Dempsey knew of Sherron's intention to take her baby on deliveries with Bryant. This, like the determination of the status of Sherron, is a critical question of fact that has been improperly decided by the trial court in its summary judgment ruling.
Liberty cites Yazoo and Mississippi Valley R.R. v. Smith, 111 Miss. 471, 71 So. 752 (1916), in support of the proposition that a child, no matter what age, may occupy the status of a trespasser; moreover, children are considered trespassers to the same extent that adult activities, under similar circumstances, would constitute trespass. However, given that Dempsey might have known, or had reason to know, that Sherron would be accompanying Bryant on numerous deliveries, it is not clear that her actions were those of a trespasser. It is equally unclear, therefore, viewing the fact that De Obra was controlled by her mother and taken on Bryant's truck, and was present in the truck under similar circumstances as her mother (i.e. with regard to the notice issue), whether she occupied the status of trespasser.
There are genuine issues of material fact that must be resolved in order to determine whether or not Sherron and De Obra were authorized to be present in Bryant's truck when the unfortunate accident occurred taking both of their lives. Thus, the trial court's finding that Sherron and De Obra were in fact trespassers was improper as this issue of status of the decedents should be resolved by the jury.

II.

DID THE TRIAL COURT ERR IN SUMMARILY HOLDING THAT THE ACTIONS OF BRYANT IN DRIVING THE TRUCK WERE NOT WILLFUL AND WANTON OR GROSS NEGLIGENCE?
After concluding that Sherron and De Obra were trespassers when they met their unfortunate death on August 15, 1988, the trial court further determined that Liberty did not breach its duty to refrain from injuring *1017 the passengers by willful and wanton or gross negligence. The court stated that "although issues of gross negligence generally constitute a jury question, in this case the plaintiff has failed to cite to the court any evidence whatsoever to support its allegations of willful or gross negligence on behalf of defendants."
Clifteen Triplett testified in deposition that Bryant told her he was sleepy while driving the rig when the accident occurred. He also said that after he pulled over to rest for a little while, that being concerned he needed to make his delivery, he continued driving. Bryant stated in deposition that he has no recollection of how the accident occurred. He stated that he was driving and that the next thing he remembered he was trying to turn the truck back onto the highway when the truck struck a tree and overturned. Bryant also testified that he was not asleep when the accident occurred, and that if he had been sleepy, he would have pulled the rig over and slept some more.
Liberty argues that there is no Mississippi case law that states that if a person falls asleep at the wheel, if that is what occurred in this case, he is guilty of willful or wanton conduct. Triplett cites Trico Coffee Co. v. Clemens, 168 Miss. 748, 151 So. 175 (1933), where a little boy was injured by the wanton and willful negligence of the truck driver. The driver in Trico invited the little boy to ride on the running board on the right side of the truck. The little boy was injured when he was thrown violently on the road after the driver had driven at a great speed down a hill and then attempted to swerve to avoid a hole in an approaching culvert. This Court stated that:
It is certainly not necessary to show that the driver of the motor vehicle was actuated by ill will toward the person injured. It is his entire lack of care for the lives and property of others, his indifference to the consequences of his act, which makes out a case of willfulness in the legal sense. The distinction between a mere tort and a willful and wanton wrong lies in the attitude of the person toward the consequences of his act.
Id. 151 So. at 176. Triplett also cites an Alabama case, Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968), in which the Alabama court, applying the scintilla rule, determined that the question as to whether or not the driver had acted with willful or wanton negligence should go to the jury. In Lankford, as in the case at bar, the driver had no recollection of how the accident occurred; he did not know whether he had fallen asleep but admitted that he could have because he "had been losing a lot of sleep." Id. 214 So.2d at 304. Liberty correctly points out that Mississippi does not follow the scintilla of evidence rule; however, the similarity of the cases supports the argument that in the case at bar, the jury should make the determination of whether Bryant's actions rose to the level of willful, wanton or gross negligence. It is certainly questionable whether Bryant's actions were willful and wanton, but that still remains a question for the jury to consider in light of Clifteen Triplett's testimony.
We, therefore, reverse the summary judgment on the status of decedents Sherron Triplett and De Obra Schree Hornesburger. We also, reverse the summary judgment as to the issue of willful, wanton or gross negligence and remand for a trial by jury.
REVERSED AND REMANDED TO THE CIRCUIT COURT OF WINSTON COUNTY, MISSISSIPPI, FOR A TRIAL BY JURY.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., concurs with separate written opinion.
McRAE, Justice, concurring:
I agree with the majority's decision that this case should have been presented to a jury and not disposed of by summary judgment. I write separately, however, to suggest that any discussion of the passengers' status is premature without first establishing Dempsey's liability under a theory either of principal/agent or respondeat superior. Once reaching that issue, it is then time that *1018 we abolish the distinctions of invitee, licensee and trespasser, and adopt instead a reasonable person standard.
Dempsey's liability stems from the negligence of its agent/employee, Terry Bryant, the driver of the truck in which Triplett and her baby were riding. It is incumbent upon the plaintiff to prove that Bryant was negligent, that he was acting as an agent or employee of Dempsey d/b/a Liberty Transportation when the accident occurred, and therefore that the employer was liable. This determination is not based on the status of the injured party and should not be. Had the plaintiffs been riding in another vehicle which was struck by a Liberty truck, any liability of Dempsey or Liberty would be predicated upon the nature of the relationship between the employer and his driver, not upon the status of the injured parties. Likewise, had suit been brought against the driver of the truck, Bryant would not have been able to raise his passengers' status as a defense. Especially considering that an employer is indemnified against his employee, it is inconsistent that the employer may raise a defense not available to that employee. Mitchell v. Eagle Motor Lines, Inc., 228 Miss. 214, 87 So.2d 466 (1956), therefore, should not control this case and should be overruled. We should instead follow the modern trend and allow a jury to decide whether the driver was negligent.
The facts of this case illustrate the need to abolish the distinction between the duties owed to invitees, licensees and trespassers. As stated above, why should an employer be less liable for injuries his employee causes to a passenger in a company vehicle than to one riding in another vehicle? Why should a passenger's status be an issue in a suit against an employer when that defense would not be available to the employee? Moreover, how can a nineteen-month-old infant be considered a trespasser? This Court's finding in Yazoo & Mississippi Valley Railroad Co. v. Smith, 111 Miss. 471, 71 So. 752 (1916) that a child of tender years could be a trespasser, despite dicta that a greater duty of care is owed when the trespasser is a child, is out of date and should be overruled.
The more logical approach is to impose a reasonable person standard of care upon a property owner, applicable to all classes of individuals. As a caveat, an exception may be made to those individuals committing a crime upon the property of another.
Accordingly, while I wholeheartedly agree that this case should have been presented to a jury, I think the majority should have gone one step further and abolished the distinctions between the duties owed to invitees, licensees and trespassers, employing instead a reasonable person standard.