# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00722-SCT

*SHELTON W. FARMER*

*v.*

*B & G FOOD ENTERPRISES, INC.*

*d/b/a TACO BELL #15326 AND*

*CLAYTON S. BRUNSON, INDIVIDUALLY,*

*AS THE NATURAL FATHER AND*

*FOR AND ON BEHALF OF*

*CLAYTON S. BRUNSON, II, A MINOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2000 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SHEILA HAVARD SMALLWOOD |
| | GLENN LOUIS WHITE |
| ATTORNEYS FOR APPELLEES: | RICHARD B. TUBERTINI |
| | JEFFREY G. PIERCE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/06/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/27/2002 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This appeal is brought by Shelton W. Farmer, a Picayune, Mississippi, police officer, from the M.R.C.P.12(b)(6) dismissal by the Pearl River County Circuit Court of the complaint for personal injuries he filed against B & G Enterprises, Inc. d/b/a Taco Bell #15326 (Taco Bell), located in Picayune, Mississippi, and Clayton S. Brunson, individually and on behalf of Clayton S. Brunson, II,[1] a minor. On May 28, 1996, Office Farmer responded to a disturbance call at the Taco Bell in Picayune, Mississippi. Upon entering the restaurant, Farmer saw Clayton S. Brunson II, a visitor, and Daniel T. Magee, a Taco Bell employee, wrestling with each other. In attempting to break up the fight, Farmer was kicked in the

knee by Brunson. Farmer suffered a severe knee injury requiring knee surgery and numerous follow up treatments. Subsequently, Farmer filed suit, and the circuit court dismissed, granting Taco Bell's M.R.C.P. 12(b)(6) motion to dismiss. The dismissal was based upon a doctrine not yet adopted by Mississippi courts, the police officer and firefighter's rule. The circuit court certified its dismissal as final pursuant to M.R.C.P. 54(b). Farmer appeals, contending that the circuit court erred in dismissing his complaint and in adopting the police officer and firefighter's rule. We affirm the dismissal of the complaint.

## DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING THE COMPLAINT UNDER M.R.C.P. 12(b)(6).

¶2. A motion to dismiss under M.R.C.P. 12(b)(6) raises an issue of law. *L.W. v. McComb Separate Mun. Sch. Dist.,* 754 So. 2d 1136, 1138 (Miss. 1999) (collecting authorities). We conduct a de novo review of questions of law. *Id.* (citing *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.,* 525 So. 2d 746, 754 (Miss. 1987)). When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *T.M. v. Noblitt,* 650 So. 2d 1340, 1342 (Miss. 1995).

¶3. The circuit court adopted the "firefighter's rule," which prohibits recovery by a firefighter, or, in this case, a police officer, injured as a result of "a risk inherent in, and foreseeable as a part of their duties as police officers." 62 Am. Jur. 2d *Premises Liability* § 431 (1990). The circuit court determined that Farmer did not allege that Taco Bell failed to warn him of any risk not reasonably expected under the circumstances.

¶4. The firefighter's rule is an issue of first impression in Mississippi. While it appears most jurisdictions still follow some version of the firefighter's rule, Minnesota, Florida, and New Jersey have abrogated the rule by statute, and Pennsylvania, Oregon, and Colorado have abolished the rule by decision. *See Hopkins v. Medeiros*, 724 N.E.2d 336 1341-43 (Mass. App. Ct. 2000). While Michigan seems to have abandoned the rule by statute (*see* Mich. Comp. Laws Ann. § 6000.2965), it appears other Michigan statutes retain the traditional common law doctrine of the firefighter's rule. *See Harris-Fields v. Syze*, 600 N.W.2d 611, 616-17 (Mich. 1999).

#### A. Firefighter's Rule Under Traditional Landlord Liability

¶5. The firefighter's rule originated over one hundred years ago and classified a firefighter as a licensee, with the property owner owing a duty to refrain from engaging in wilful, wanton or intentional conduct:

> In *Gibson v. Leonard,* 32 N.E. 182 (Ill. 1892) , as well as most of the early cases involving fire fighters, the court analyzed the issue of liability on the basis of the traditional status categories of entrants upon the property of another-invitee, licensee, or trespasser. The *Gibson* court determined that the plaintiff fireman was a licensee, and, therefore, the property owner only owed him a duty to avoid inflicting wilful, wanton, or intentional injuries.

*Kreski v. Modern Wholesale Elec. Supply Co.,* 415 N.W.2d 178, 183 (Mich. 1987) (citing *Gibson v. Leonard,* 32 N.E. 182 (Ill. 1892)).

¶6. The Restatement (Second) of Torts treats a public officer entering a part of the land open to the public

in the performance of public duty to hold the status of an invitee. Restatement (Second) of Torts § 345 & comments (1965). (Note that § 345(2) would be applicable to the instant case, because the policeman suffered harm "because of a condition <u>of a part of the land held open to the public</u>.") Thus, Farmer, under the Restatement (Second) of Torts, would enjoy invitee status, which under Mississippi premises law raises the duty of Taco Bell to Farmer to that of reasonable care. ***Clark v. Moore Mem. United Methodist Church,*** 538 So. 2d 760, 764 (Miss. 1989) ("The duty owed by an invitor to an invitee is to exercise reasonable care to keep the premises in a reasonably safe condition and, if the invitor knows of, or by the exercise of reasonable care should have known of, a dangerous condition, which is not readily apparent to the invitee, the invitor is under a duty to warn the invitee of such condition.").

¶7. Twenty years after the Restatement was written, Professor Prosser stated that Restatement § 345(2) is followed only "by a small number of courts." Regardless, Prosser expressed some approval for it. *See* Prosser & Keeton, *The Law of Torts* § 61, at 432 (1984). Most states that have addressed the issue continue to treat police officers and firefighters as licensees either expressly or as a practical effect by basing the doctrine on public policy.

### B. Firefighter's Rule as Public Policy

¶8. The inherent limitations in accurately fitting firefighters into the traditional landowner liability context have caused courts to look beyond the concept of the entrant's status as a rationale for the firefighter's rule, and instead adopt the rule on the basis of assumption of risk and public policy. *See **Kreski***, 415 N.W.2d at 184. Many states, including Mississippi,[2] have abandoned or merged the doctrine of assumption of risk into other negligence schemes. Despite this trend, nearly all of those states choosing to abandon the assumption of risk doctrine retained the firefighter's rule, instead relying on public policy as the sole basis for reaffirming the utility and viability of the rule. *See **Carson v. Headrick,*** 900 S.W.2d 685, 689-90 (Tenn. 1995) (citing decisions in California, Florida, Hawaii, Idaho, Kansas, Kentucky, Nevada, New Hampshire, New Jersey, Rhode Island, Wisconsin, Arizona, Georgia, Indiana, and New Mexico).

¶9. The rationale for adopting the firefighter's rule as public policy is tied to the nature of the public service police officers and firefighters provide as public servants.

> The policy arguments for adopting a fireman's rule stem from the nature of the service provided by firefighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect.

> It is beyond peradventure that the maintenance of organized society requires the presence and protection of firefighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular. The court in ***Calvert v. Garvey Elevators, Inc.***, 694 P.2d 433 (1985) noted that "[f]irefighters enter on the premises to discharge their duties. Fire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole." ***Calvert***, supra, 694 P.2d 433.

> The public hires, trains, and compensates firefighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety officer's presence.

*Kreski,* 415 N.W.2d at 186-87. *See also **Carson,*** 900 S.W.2d at 690.

¶10. Rescue personnel are uniquely situated and thus call for a special rule. As noted by one commentator,

> A firefighter may not decline to enter onto premises to fight a fire because a porch which he must cross appears rickety. A police officer may not decline to enter an office building to apprehend a suspected thief, simply because the approach to the office building may be slippery with snow and ice. On the contrary, police officers and firefighters simply act differently from ordinary citizens in encountering the obligations of their occupations and the manner in which they do so must be considered when assessing the applicability of the fireman's rule. Ordinary citizens do not, for instance, alight from their cars and attempt to traverse unknown premises, in the pitch dark of night, without some effort to illuminate their path. These are actions which no landowner should reasonably anticipate or foresee that a citizen will take. These are actions which the firefighter or police officer must take, at his sole judgment and discretion, without any notice or warning to the landowner of the unusual use which will be made of the property.

Margaret Fonshell Ward, *Clearing the Smoke Around the Fireman's Rule*, 34 M.B.J. 48, 53 (June 2001).

¶11. Minnesota and Oregon, two jurisdictions that have refused to recognize the firefighter's rule, would ignore premises liability standards and public policy and frame the issue on the basis of negligence and reasonable necessity. In ***Christensen v. Murphy,*** 678 P.2d 1210, 1218 (Or. 1984), the Oregon Supreme Court determined that "[a]s a result of the statutory abolition of the implied assumption of risk, the '[policeman and] fireman's rule could no longer be used to prevent recovery by a public safety officer who suffered an injury as a result of the defendant's negligent conduct." Instead of relying on public policy arguments to retain the rule, the ***Christensen*** court determined the "so-called public policy reasons are merely redraped arguments drawn from premises liability or implied assumption of risk, neither of which are now available as legal foundations in [Oregon]." *Id.* at 1217.[(3)]

## C. Wisconsin Rule

¶12. An interesting and persuasive deviation of the firefighter's rule is illustrated by the "Wisconsin rule," which holds that the firefighter's rule applies *only if the initial act of negligence caused the injury to the policeman or fireman.* This rule bars a cause of action only when the sole negligent act is the same negligent act that necessitated rescue and therefore brought the police officer/firefighter to the scene of the emergency. If the cause of action is based on *any other negligent act* (such as negligent failure to warn, negligent violation of an ordinance designed to protect the injured party, or negligent manufacture of a dangerous product), public policy does not bar recovery. The rule is based on public policy and is not rooted in premises liability. "Fundamentally, th[is rule] is an expression of public policy because it prohibits a firefighter from 'complaining about the negligence that creates the very need for his or her employment.'" ***Pinter v. American Family Mut. Ins. Co.***, 613 N.W.2d 110, 117 (Wis. 2000).

## D. Public Policy Considerations.

¶13. While certain policy considerations and societal expectations supporting the firefighter's rule turn on the fact that "the public hires, trains, and compensates . . . police officers to deal with dangerous, but inevitable situations,"*Kreski*, 415 N.W.2d at 187, the rule is also justified in matching costs and benefits. "The benefit

of the performance of the [firefighter's] duty is shared by all citizens of the community, likewise the burden of loss caused by injury should be shared by all citizens of the community through taxes." *Carpenter v. O'Day*, 562 A.2d 596, 601 (Del. Super. Ct. 1988) (citations omitted), *aff'd mem.*, 553 A.2d 638 (Del. 1988). New Jersey retains the firefighter's rule to prevent taxpayers from the possibility of paying double recoveries:

> Both [firefighters and police officers] are paid to confront crises and allay dangers created by an uncircumspect citizenry, a circumstance that serves to distinguish firefighters and police from most other public employees. Citizens summon police and firefighters to confront danger. Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk.

> * * *

> This fundamental concept rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from the taxpayer's own future acts of negligence.

> * * *

> [T]he taxpayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. Otherwise, individual citizens would compensate police officers twice: once for risking injury, once for sustaining it.

*Kiernan v. Miller*, 612 A.2d 1344, 1346 (N.J. Super. Law Div. 1992).

¶14. The Michigan Supreme Court in *Kreski* noted, "worker's compensation benefits are available to police officers . . . in the course of their employment. This fairly spreads the cost of these injuries to the public as a whole rather than individual property owners." 415 N.W.2d at 188.

¶15. Based on these public policy considerations and societal expectations, we are persuaded that the Wisconsin version of the firefighter's rule is the best expression of this legal principle, and we adopt it. We hold that an action brought by a firefighter or a police officer for an injury sustained as the result of a negligent act by another party and sustained in the course of his employment is barred only when the sole negligent act is the same negligent act that necessitated rescue and therefore brought the firefighter or police officer to the scene of the emergency. If, however, the cause of action is based on any other negligent act (such as negligent failure to warn, negligent violation of an ordinance designed to protect the injured party, or negligent manufacture of a dangerous product), public policy does not bar recovery. *See, e.g., Pinter,* 613 N.W.2d at 115.

¶16. The licensee/invitee distinction does not come into play when the injured party is a person (such as a firefighter or a police officer) who has been specially trained and who is paid by a governmental entity to enter into dangerous situations and perform a public duty. Such a person is *obligated* to enter upon another's property to perform the duty. This fact causes a firefighter to be sui generis, and therefore a firefighter cannot be fairly characterized as a licensee or invitee. *Hass v. Chicago & N.W. Ry.*, 179 N.W.2d 885, 886-87 (Wis. 1970). Furthermore, public policy is the basis of our adoption of the

firefighter's rule, not negligence. *See, e.g., **Clark v. Corby***, 249 N.W.2d 567, 569 (Wis. 1977).

### E. Application of the Rule to Farmer

¶17. We hold that Farmer's cause of action against Taco Bell is barred by the application of the firefighter's rule and that the circuit court was correct in dismissing the complaint. The police were summoned to respond to a disturbance (a fight) at the Taco Bell. When Farmer, a police officer, arrived on the scene, the two men were still fighting. In an attempt to break up the fight, Farmer was injured. Farmer's injury was sustained as the result of a of the same negligent act that necessitated the call for police assistance and that brought Farmer to the Taco Bell.

### II. WHETHER FARMER SHOULD BE ALLOWED LEAVE TO AMEND HIS COMPLAINT TO ASSERT THE PROPER CLAIM FOR RELIEF.

¶18. Farmer argues that pursuant to M.R.C.P. 15, he should be afforded leave to amend his complaint to assert a proper claim for relief should this court affirm the trial court's dismissal. We have repeatedly stated that matters not properly brought before the trial court, typically cannot be raised on direct appeal: "[w]e accept without hesitation the ordinarily sound principle that this Court sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court." ***Educational Placement Servs. v. Wilson,*** 487 So. 2d 1316, 1320 (Miss. 1986).

¶19. Under Rule 15(a), the court's dismissal of Farmer's complaint for failure to state a claim for which relief can be granted afforded him an automatic right to amend within thirty days. Farmer's failure to amend his complaint within thirty days prevents him from doing so on appeal. *See **Duncan v. Chamblee,*** 757 So. 2d 946, 950 (Miss. 1999) (citing ***Sligh v. First Nat'l Bank,*** 704 So. 2d 1020, 1024 (Miss. 1997)). Farmer could have moved to amend the order dismissal to allow for an amended complaint or simply have filed such an amendment, asserting the right under the rule. Either way, the trial court was not given the opportunity to rule on this matter, such that we find this assignment of error to be procedurally barred.

### CONCLUSION

¶20. For the foregoing reasons, the judgment of the Pearl River County Circuit Court is affirmed.

¶21. **AFFIRMED.**

> **PITTMAN, C.J., SMITH, P.J., AND CARLSON, J., CONCUR. COBB, J., CONCURS IN RESULT ONLY. GRAVES, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J.**

> **GRAVES, JUSTICE, CONCURRING:**

¶22. I agree with the result reached by the majority, but I do not join the majority opinion. I would go further and abolish the "licensee" and "invitee" distinction as I find no reason to maintain these legal fictions in premises liability cases. I write separately to encourage the abolishment of the licensee and invitee distinction in premises liability cases and to encourage the adoption a version of the Firefighter's Rule for those cases involving rescue personnel.

¶23. The Firefighter's Rule seems to be a workable solution to an often thorny problem. Rescue personnel are not like everyone else and do not easily fit into a particular category. This rule applies only to public service jobs which require special training and experience that prepares the trainee to provide assistance under dangerous emergency conditions. *Pinter v. American Family Mut. Ins. Co.,* 613 N.W.2d 110, 115 (Wis. 2000). The public policy behind the Firefighter's Rule was ably express by the *Pinter* court:

> We are convinced that the public policy analysis in *Hass* remains sound. It is still true that nearly all fires are caused by negligence. It is therefore still true that permitting firefighters to pursue negligence actions based on the negligent act of starting a fire would place an unreasonable burden on the owners and occupiers of premises and would enter a field with no sensible or just stopping point. Fundamentally, the rule recognized in *Hass* is an expression of public policy because it prohibits a firefighter from "complaining about the negligence that creates the very need for his or her employment."

*Id.* at 117 (citations omitted) (quoting *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 39 (R.I. 1989). The Supreme Court of Hawaii has also spoken to this policy:

> The very purpose of the fire fighting profession is to confront danger. Fire fighters are hired, trained, and compensated to deal with dangerous situations that are often caused by negligent conduct or acts. "[I]t offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services."

*Thomas v. Pang*, 811 P.2d 821, 825 (Hawaii 1991) (quoting *Pottenbaum v. Hinds*, 347 N.W.2d 642, 645 (Iowa 1984)).

¶24. Although frequently the salary paid to rescue personnel is not proportional to the duties performed, it is absurd to place the burden of ensuring their safety and care, while doing their job, upon the public they are engaged to protect. This is so because the salary and benefits paid to rescue personnel come from public funds. However, instead of adopting the version of the Firefighter's Rule adopted by the majority, I find public policy to weigh in favor of adopting for Mississippi a version of the Firefighter's Rule advocated by commentator Margaret Fonshell Ward. Apart from certain limitations, rescue personnel should not be permitted to recover for those injuries incurred while performing their duties. As suggested by Ward:

> Application of the fireman's rule should be subject to limitations for instances in which the potential defendant 1) acted with willful, wanton, or intentional conduct. . .; 2) had a knowledge of the condition, and deliberately failed to take an opportunity to warn the officer; 3) negligently created or maintained an extraordinary, rare, and uncommon hazard; or 4) unleashed an active dangerous force on the premises after the officer's arrival and with knowledge of his presence.

Margaret Fonshell Ward, *Clearing the Smoke Around the Fireman's Rule*, 34 M. B.J. 48, 53 (June 2001).

¶25. The Ward version of the Firefighter's Rule would preclude Farmer's claim for damages as his injury was caused by the fight between Clayton Brunson and the Taco Bell employee, Daniel Magee, the original reason to call for Farmer's assistance. None of the proposed limitations to the rule apply in this instance. Therefore, I concur in affirming the trial court's judgment, but I would abolish the licensee/invitee distinction and adopt the Ward version of the Firefighter's Rule.

**DIAZ, J., JOINS THIS OPINION**.

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶26. We live in a time when the heroic deeds firefighters and police officers perform for the citizens of this state and this country have become manifest. These acts of valor cannot be better highlighted than by the tragic events that occurred last year at the World Trade Center where hundreds of firefighters and police officers lost their lives.

¶27. By adopting the firefighter's rule, the majority cheapens the importance of the duties carried out by our firefighters and police officers. This rule has the effect of punishing firefighters and police officers by depriving them of a right guaranteed in our Constitution. The majority's immunity of negligence is contrary to our Constitution and jurisprudence which provides that "where there is a wrong, there is a redress." Miss. Const. art. 3, § 24. The Constitution does not make an exception for firefighters and police officers in the line of duty; therefore, they should have the same rights to sue as any other citizen. Police officers and firefighters deserve the full measure of our Constitution as well as any other citizen. Moreover, the majority legislates in this case on public policy issues. Our Constitution provides that if there is a public policy issue to be addressed, it is for the Legislature, not this Court. *See City of Starkville v. 4-County Elec. Power Ass'n*, 2002 WL 24619, *4 (Miss. 2002). Accordingly, I respectfully dissent.

¶28. The majority adopts the Wisconsin rule which states that public policy bars recovery when an injury is sustained as a result of a negligent act that necessitated rescue. However, the rule allows a cause of action when some other negligent act causes injury. The majority attempts to justify the adoption of the rule through public policy arguments and cost-benefit analysis. These arguments are neither persuasive nor proper. While it is true that firefighters and police officers serve for the benefit of society, this service should not be to their personal detriment. Furthermore, this new rule and its distinction creates more uncertainty and ambiguity in negligence cases. This Court's role is to provide certainty and clarity in the interpretation of our laws. Instead of clarification and predictability, the majority further muddies the waters for litigants, trial judges and attorneys in negligence cases by adopting the firefighter's rule.

¶29. I would apply the Supreme Court of Oregon's analysis and base Farmer's case in negligence. In *Christensen v. Murphy*, 678 P.2d 1210, 1217 (Or. 1984), the court noted that the firefighter's rule is based on principles of assumption of risk. Like Oregon, we have merged "assumption of risk" with our comparative negligence statute. *See Horton v. American Tobacco Co.*, 667 So.2d 1289, 1305 (Miss. 1995). Therefore, the firefighter's rule has no bearing in our negligence cases. The Oregon Supreme Court also noted, and I agree, that the public policy arguments posed in support of the firefighter's rule "are merely redraped arguments drawn from premises liability or implied assumption of risk." *Christensen*, 678 P.2d at 1217. Applying negligence principles and our familiar "reasonable person in like circumstances" standard maintains common sense, consistency, and predictability in the law.

¶30. This case again calls for the abolishment of the antiquated distinction between the duties owed by premises owners to invitees and licensees. *See Hall v. Cagle*, 773 So.2d 928, 930 (Miss. 2000) (McRae, J., concurring); *Little v. Bell*, 719 So.2d 757 (Miss. 1998) (McRae, J., dissenting); *Triplett v. Dempsey*, 633 So.2d 1011, 1018 (Miss. 1994) (McRae, J., concurring). Instead of deciding cases based on outdated labels, we should impose a "reasonable person in like circumstances" standard as we do in all other negligence cases. If the owner was negligent and caused the injury of a police officer then the owner should be entitled to present his case to a jury. If he was not negligent, then the case should be dismissed on

a summary judgment motion. The trial court's dismissal in the case *sub judice* should be reversed, and the case remanded for trial under our reasonable person standard that has been in existence for over 100 years.

¶31. The trial court dismissed this case on a Rule 12(b)(6) motion. Based on the adoption of the firefighter's rule, the majority affirms that dismissal. I disagree with the adoption of the firefighter's rule and would reverse the trial court and remand the case for trial pursuant to the proper legal standard, that of a reasonable person in like circumstances.

¶32. Accordingly, I dissent.

**EASLEY, J., JOINS THIS OPINION.**

1. This appeal only concerns the grant of Taco Bell's motion to dismiss. Farmer's claim against Brunson is not before us.

2. *See* **Churchill v. Pearl River Basin Dev. Dist.,** 757 So. 2d 940, 943 (Miss. 1999).

3. The arguments on whether to abandon statuses in premises liability cases are set out in **Little v. Bell**, 719 So. 2d 757, 759 (Miss. 1998).